**Fred M. FORD, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 15672.

United States Court of Appeals Fifth Circuit.

April 19, 1956.

Rehearing Denied May 22, 1956.

58

Douglas W. McGregor, Houston, Tex., McGregor & Sewell, Houston, Tex., of counsel, for appellant.

Harman Parrott, Asst. U. S. Atty., San Antonio, Tex., Frederick B. Ugast, Atty., Dept. of Justice, Washington, D. C., Russell B. Wine, U. S. Atty., San Antonio, Tex., for appellee.

Before BORAH, TUTTLE and JONES, Circuit Judges.

JONES, Circuit Judge.

An indictment in three counts charged that appellant had wilfully and knowingly attempted to evade and defeat a large part of the income tax due and owing by him and his wife for the years 1945, 1946 and 1947 by filing false and fraudulent returns on behalf of himself and his wife wherein he reported income for a less sum than the true amount, and in which he stated the tax for smaller amounts than he knew to be owing. The counts were in substantially the same form. A separate count set forth the amounts of income and tax for each of the three years. The indictment alleged violations of the portion of the Internal Revenue Code of 1939 which provided that:

> " * * * any person who willfully attempts in any manner to evade or defeat any tax imposed by this chapter or the payment thereof, shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, be fined not more than $10,000, or imprisoned for not more than five years, or both, together with the costs of prosecution." Internal Revenue Code of 1939, Former 26 U.S.

C.A. § 145(b); Internal Revenue Code of 1954, 26 U.S.C.A. § 7201.

■ This is an appeal from a conviction and sentence following a second trial of this case held at Austin, Texas. This court reversed a conviction obtained at the first trial. Ford v. United States, 5 Cir., 1954, 210 F.2d 313. At the second trial, as at the first, the Government relied upon the cash receipts and expenditures method, sometimes called the net worth method, of establishing unreported income. In the first appeal, as in the present appeal, the appellant contended that the District Court should have granted a motion for acquittal because of the insufficiency of the evidence. After relating in some detail the evidence adduced at the former trial it was held by this Court that the motion for acquittal was properly denied. The evidence in the record now before us presents proofs no less convincing, and without setting forth the evidentiary facts, we hold, as we held before, that the motion for acquittal was properly denied.

■ The appellant contends that error was committed in denying his motion for acquittal because there had been no determination of his tax liability by the Commissioner under § 272 or § 3612 of the Internal Revenue Code of 1939. § 272 of the Internal Revenue Code of 1939, former 26 U.S.C.A., provides for the procedure in determining the correctness of a tax deficiency proposed by the Commissioner of Internal Revenue, including the issuance of the familiar ninety-day letter. § 3612 authorizes the Collector to make a return where no return or a false or fraudulent return has been filed, and requires that the Commissioner [of Internal Revenue] shall determine and assess all taxes, other than stamp taxes, as to which returns are made pursuant to the section. Whatever bearing the appellant's contention might have in a proceeding for the collection of a tax, it has no application in a criminal prosecution for attempting to evade and defeat a tax by filing false and fraudulent returns. As this Court has heretofore said:

"A prosecution for income tax evasion is not an effort by the Government to compute income tax at all. It is an effort by the Government to prove that the taxpayer failed to compute it honestly. There is nothing in this Section [Former 26 U.S.C.A. § 41] nor in any other applicable statute that restricts the Government in the method of proving this fact if it exists." Dupree v. United States, 5 Cir., 1955, 218 F.2d 781, 789.

■ At the first trial of this case, Margaret Lera testified as a witness for the Government. She testified as a witness for the Government at the second trial. On the first trial this witness testified to the making of pay-offs to the police department of Galveston. There was no testimony in the first trial that the appellant received any of the moneys. We held, on the former appeal, that the admission of the testimony of this witness was erroneous and highly prejudicial. For this error, and another which we need not here mention, a new trial was granted. At the second trial the witness testified that she sent pay-off money to the appellant during the years 1945, 1946 and 1947 by detectives. Being interrogated about conversations between the appellant and herself during these years, she stated that she had asked appellant if the detectives had been delivering what she had been sending, and quoted his reply as being "Yes, that everything was all right". This, we think, was enough to meet the objection which was found to be error on the former appeal. It was shown that Mrs. Lera had made a settlement after the first conviction of the appellant of her own income tax liability. On cross-examination she told of being interviewed by Government agents about a month before the trial, being furnished with a transcript of the questions and answers comprising the interview, and of burning the transcript of the testimony during the noon recess of the day she testified. The owing and settlement of income taxes, the discussion with Government agents regarding some matter, possibly the Ford case, and the destruction of the transcript of the interview are not matters which would exclude Mrs. Lera's testimony.

The District Court admitted testimony as to expenditures made by appellant's wife and error is assigned because such testimony was received. There was evidence that such funds as Mrs. Ford had and spent were received from the appellant. The court declined to give a charge to the jury, requested by appellant, that it should give no consideration to purchases of Mrs. Ford in determing the taxable income of the appellant. We need not discuss these questions as they are disposed of in the former appeal. Ford v. United States, supra. See Lloyd v. United States, 5 Cir., 1955, 226 F.2d 9.

■■ Relying chiefly upon Calderon v. United States, 9 Cir., 1953, 207 F.2d 377, the appellant urges that the unsworn statements made by appellant to Government agents were inadmissible because, he says, the corpus delicti had not been established. The agents testified that appellant had said, in response to questions, that he kept cash in a chifforobe drawer in the amount of two or three thousand dollars in 1945 and 1947. Again he said, that in 1944, prior to the tax years involved, he had $12,000 in cash in the chifforobe drawer. Where the net worth doctrine is relied upon in a criminal prosecution of a tax evasion case, the taxpayer's opening net worth cannot be established by his uncorroborated extra-judicial statement. Smith v. United States, 348 U.S. 147, 75 S.Ct. 194, 99 L. Ed. 192; United States v. Calderon, 348 U.S. 160, 75 S.Ct. 186, 99 L.Ed. 202. In the case before us the Government did not rely upon but rather rejected the statements of the appellant Ford as to the cash in the drawer. When the extra-judicial statements are disbelieved and are not relied upon by the Government it can hardly be error on its part that it produced no corroborative evidence.

■ The appellant urges that the indictment upon which he was convicted

was void because the only witness who appeared before the Grand Jury was a Government agent who had no personal knowledge of the facts, that his testimony was based upon hearsay and hence incompetent. The Supreme Court of the United States has considered the question and given an answer adverse to appellant's contention. In the *causa celebre* of Frank Costello a conviction was had of income tax evasion upon proof of increases of net worth. The only witnesses before the Grand Jury which returned the indictment were Government agents who had no first-hand knowledge. The Supreme Court, in an opinion rendered March 5, 1956, held the indictment valid and said:

> "In Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 4, 54 L.Ed. 1021, this Court had to decide whether an indictment should be quashed because supported in part by incompetent evidence. Aside from the incompetent evidence 'there was very little evidence against the accused.' The Court refused to hold that such an indictment should be quashed, pointing out that 'The abuses of criminal practice would be enhanced if indictments could be upset on such a ground.' 218 U.S. at page 248, 31 S.Ct. at page 4. The same thing is true where as here all the evidence before the grand jury was in the nature of 'hearsay.' If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment. An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more.

> "Petitioner urges that this Court should exercise its power to supervise the administration of justice in federal courts and establish a rule permitting defendants to challenge indictments on the ground that they are not supported by adequate or competent evidence. No persuasive reasons are advanced for establishing such a rule. It would run counter to the whole history of the grand jury institution, in which laymen conduct their inquiries unfettered by technical rules. Neither justice nor the concept of a fair trial requires such a change. In a trial on the merits, defendants are entitled to a strict observance of all the rules designed to bring about a fair verdict. Defendants are not entitled, however, to a rule which would result in interminable delay but add nothing to the assurance of a fair trial." Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 408, 100 L.Ed. ——.

The appellant also contends that because the only witness before the Grand Jury did not compute taxes there could not have been any evidence before the Grand Jury from which an indictment could have been found as to the amount of tax, if any, due by appellant. To this there are two answers; first, there was no indictment sought or returned with respect to the amount of appellant's unpaid tax; and second, the holding in Costello, supra, is contra to the position we are asked to take.

The Government introduced as one of its witnesses, George Roy Clough, the Mayor of Galveston at the time of the trial, who testified that the reputation of appellant for being a peaceable and law-abiding citizen during the years in question was bad. On cross-examination questions were asked and answer elicited showing or tending to show the bias of the witness against the appellant. Counsel for the appellant then proposed to show by the witness that as a candidate

for Mayor he had advocated open houses of prostitution. The court sustained objections to this line of questioning. Claiming this was error, the appellant tries to come within the rule announced in Alford v. United States, 282 U.S. 687, 51 S.Ct. 218, 219, 75 L.Ed. 624. The trial court had, in the Alford case, declined to permit counsel for the defendant to show that a Government witness was, at the time of the trial, in custody of Federal authorities. The Supreme Court reversed saying that "Cross-examination of a witness is a matter of right", and that:

"Its permissible purposes, among others, are that the witness may be identified with his community so that independent testimony may be sought and offered of his reputation for veracity in his own neighborhood [citing cases] that the jury may interpret his testimony in the light reflected upon it by knowledge of his environment [citing cases]; and that facts may be brought out tending to discredit the witness by showing that his testimony in chief was untrue or biased [citing cases]. " * * * Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them." Alford v. United States, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624.

■ The extent of the scope of cross-examination is largely within the discretion of the trial court and its ruling will not be reversed absent an abuse of discretion. A wide latitude is allowed in order to show hostility, bias, prejudice, or interest, or to discredit the knowledge or veracity of the witness. Wharton's Criminal Evidence, 12th ed. Vol. III, p. 266, et seq. § 871 et seq.; Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 470, 86 L.Ed. 680. The views of the witness as to the desirability of open houses of prostitution would not tend to show any bias of the witness against the appellant or that the witness was unworthy of belief. The rejected testimony was not relevant and was properly excluded.

■ At the beginning of the trial the court instructed the jury in these words:

"Gentlemen of the Jury, during the trial of this case you will be permitted to separate, but you must not discuss the facts of this case with anyone, nor permit anyone to discuss the facts in your presence or hearing. Don't read any stories in the newspapers about the case".

While in Austin waiting to be called as a witness in this case, Mayor Clough was interviewed by a newspaper reporter. The press report of this interview quoted the Galveston mayor as saying that he had the greatest admiration for the lowest prostitute when compared to his contempt for city officials who accept her money for permission to operate. The newspaper item gave other views of the Mayor about prostitution, gambling and liquor. This story appearing in the morning of the last day of the trial (the verdict was returned the following morning), was headlined " 'I Believe: Live and Let Live.' Galveston's George R. Clough. Galveston Haven—Clough Promises Prostitutes Home." The appellant's counsel made a motion to interrogate the jury as to whether they had read the article for the stated purpose of determining whether any of the jury may have been prejudiced by the article. The Court overruled the motion and its action is specified by the appellant as an error. The published article was a rather sensational report of a rather extended interview, but the only portions which could be said to have any direct influence upon the mind of a juror were the statement that the witness Clough had the greatest admiration for the lowest prostitute when compared to his own contempt for city officials who accept money for permission to operate, and his reference to unscrupulous politicians and pay-offs as the curse of America. The rest of the article related to the Mayor's views regarding the toleration of prosti-

tution. In urging that the District Court erred, the appellant quotes from American Jurisprudence as follows:

"It is improper for jurors to read newspaper accounts of the progress of a trial or relating to the case on trial. But a new trial should not be granted by a trial court because thereof unless the facts are such that it cannot determine with reasonable certainty whether the result was effected. Nor is a verdict vitiated by the finding of a newspaper in the jury room where the jury had no knowledge of its contents." 53 Am. Jur. 644, Trial § 895.

In the pocket supplement to the above-cited volume the editors have made an addition to the foregoing text in these words:

"It is within the discretion of the trial court as to whether, after impanelment, during a criminal trial, the jurors may be interrogated or polled as to whether they have read newspaper articles pertaining to the alleged crime or the trial." 1955 Cum.Supp. Vol. 53, Am.Jur. p. 40. See annotation 15 A.L.R.2d 1152.

This Court, considering a similar question, in a case where the Government had been permitted to impeach its own witness and the press reported upon the impeachment and the subsequent arrest of the witness for perjury, said:

"On the day following impeachment of the witness Diaz, appellant presented to the court a written motion for a mistrial, to which was attached the front page of an El Paso morning newspaper containing an account of the arrest of Diaz for perjury in denying receipt of the stolen property from appellant. Appellant orally informed the court that similar accounts had been broadcast over the El Paso radio stations. The court overruled this motion, and denied a request by appellant that the jurors be interrogated relative to their knowledge of the radio and newspaper reports, but instructed the jury not to read any articles or listen to radio reports in connection with the case, and further instructed them, in case such reports had already reached the jury, that they should not be considered for any purpose." Apodaca v. United States, 5 Cir., 1953, 200 F.2d 775, 777.

The appellant does not complain that no further instruction was given the jury, and of course would not be heard in the making of such a complaint as no instruction was requested. The refusal to permit interrogation of the jury regarding the newspaper article was not error.

Other questions raised are without merit and do not require discussion. The judgment before us on appeal is

Affirmed.