John Milton ADDISON et al., Appellants,

v.

UNITED STATES of America, Appellee.

No. 18902.

United States Court of Appeals Fifth Circuit.

May 24, 1963.

Robert H. Power, Irving, Tex., James L. Guilmartin, Stanley Jay Bartel, Edwin C. Ratiner, Fuller Warren, Miami, Fla., for appellants.

W. B. West, III, Atty., Dept. of Justice, Washington, D. C., Robert S. Travis, Asst. U. S. Atty., Fort Worth, Tex., for appellee; Barefoot Sanders, U. S. Atty., C. W. Aston, Securities and Exchange Comm., of counsel.

Before TUTTLE, Chief Judge, and WISDOM and GEWIN, Circuit Judges.

TUTTLE, Chief Judge.

This is an appeal from conviction and sentence of the six appellants who were indicted and tried on twenty-four counts charging violation of the criminal sections of the Securities and Exchange Act, and charging violation of Title 18 U.S.C.A. § 1341, dealing with the use of the mails in executing a scheme and artifice to defraud. Count twenty-four also charged a conspiracy on the part of the defendants and certain other persons to violate the statutes included in the other counts of the indictment, a violation of 18 U.S.C.A. § 371.

Following a trial, which lasted approximately four weeks, all of the appellants were found guilty on twelve counts, including the conspiracy count. They were found not guilty of counts twenty-two and twenty-three, dealing respectively with the delivery through the mails of a security after a sale thereof without there then being in effect a registration statement as to such security and an offer to sell such securities through interstate commerce when there was not then in effect a registration as to such securities. The government dismissed counts five through ten and counts fifteen, seventeen, nineteen and twenty-one, after the conclusion of the evidence, and just prior to the submission of the case to the jury. Giving effect to the sentences that run concurrently, Addison stood convicted and sentenced to serve a total of fifteen years, and to pay fines totalling $36,000; White to serve seven years and one day, and to pay total fines of $20,000; Olson to serve two years and pay a $5,000 fine; Groom to serve five years; Scoggins to serve two years and pay a $5,000 fine; and Metz to serve two years and pay a $5,000 fine.

■ Principal reliance by all appellants is placed upon the fact that the official court reporter who reported the trial failed to comply with the part of the requirements of 28 U.S.C.A. § 753(b).[1] To the extent that he did not take down by shorthand or by mechanical means the arguments of counsel, appellants take the bald and flat position that this re-

1. This section provides as follows:
"One of the reporters appointed for each such court shall attend at each session of the court and at every other proceeding designated by rule or order of the court or by one of the judges, and shall record verbatim by shorthand or by mechanical means: (1) all proceedings in criminal cases had in open court * * *."

quirement of the law is what they call "mandatory" and that the failure to comply with the statute works an automatic reversal for a new trial. This Court has held to the contrary. We stated in Strauss v. United States, 5 Cir., 311 F. 2d 926, "We have never held that a failure to comply with the Court Reporter Act is error per se. See Fowler v. United States, 5 Cir., 1962, 310 F.2d 66; and United States v. Taylor, 4 Cir., 1962, 303 F.2d 165. We do not do so now, and that in substance is the question before us."

■ In their appeal in this case, although appellants were represented in the trial by six lawyers, one of whom is still representing one of the appellants in this court, the record is silent as to any objection made or any motion of any kind filed with respect to any alleged impropriety during the course of the final arguments of counsel. Nor have the appellants in their original brief filed in this case attempted to state that any inflammatory or other improper comments were made by counsel during their summations. Obviously, even though a failure of the court reporter to report the arguments of counsel were an error per se, such error would not be available to appellants to work a reversal without a showing that it was prejudicial error. Rule 52(a) F.R.Crim.Proc. Without even the contention being made as to language used or other conduct of counsel that goes beyond the permitted range of oral argument, no effort is made to show that such failure prejudiced appellants. In such a situation the language used in the Strauss case is apposite:

"Furthermore, no specific error or prejudice resulting therefrom is called to our attention. This is the very least that would be required under Stephens v. United States, 5 Cir., 1961, 289 F.2d 308, where errors were specified, and where there was no record on which to test the claimed errors. To permit an appellant simply to claim error for failure to record under the Act,

without more, would eliminate the necessity of a showing of prejudice because of the error. The error may well have been harmless when considered in the light of the facts which were reported."

We now repeat what we stated in the Strauss case—There is no excuse for a court reporter's failure to comply with the requirements of the statute, unless the party waives the requirement. However, this does not work on automatic reversal.

■ Much of the attention of the parties on this appeal has been directed to the fact that when the United States was served with appellants' brief criticizing the failure of the reporter to record the oral arguments of counsel, the United States moved the trial court for a hearing on a motion to supplement the record in an effort by it to show what it contended had actually transpired with respect to this failure. The trial court granted such motion, and set the matter down for hearing. Testimony was taken, as a result of which the trial court found, as testified to by the court reporter, that counsel for each of the defendants in the trial court stated to him that they did not wish to have him report the oral arguments.

Appellants strongly attack the propriety of such a proceeding to supplement the record. Because of the failure of the appellants to allege any prejudice to them resulting from the failure of the trial court reporter to record the oral argument, we have disposed of this point on the broad ground that nothing is here presented that can avail the appellants on appeal. We thus do not pass on the question whether the record can be supplemented in such a manner. It is appropriate, however, to call attention to the fact that unless the record is supplemented, there is nothing to support the appellants' contention that the reporter failed to comply with the statute, since the statute *requires only that the reporter take down the testimony by shorthand or mechanical means*, there being no re-

quirement that he transcribe it and include it as part of the record unless requested to do so. Thus the record, as presented to this court by the appellants, did not support their contention that the reporter had failed to comply with the statute. This is not the kind of matter that ordinarily appears in the record. Now, when the supplementary hearings disclose the fact that he did not do so, they also disclose the fact that his failure to do so was by the consent of the parties.

■ ■ The next most vigorous argument made on behalf of appellants, Addison and Olson, relate to the failure of the trial court to suppress certain evidence which these appellants contend came into the possession of the United States from certain Texas state officials. The plain difficulty with this contention is that although the trial court conducted a long hearing prior to trial on a motion filed by these appellants to suppress as evidence in the case documents and papers alleged to have been taken from hotel rooms of Addison and Olson by state officials, and by them turned over to the United States agents, no specific items were identified as being the basis of the motion to suppress, and the trial court did not enter an order finally granting or denying the motion, thus leaving it open to the appellants during the trial to offer their objection to any specific document or other bit of evidence which they considered to have been the subject of such illegal seizure.

Appellants write with great feeling about the ten filing cabinets that were taken from the hotel rooms, and it appears that their argument is pretty much the same as it was on the first point, that the mere fact that state officials took certain cabinets of papers from the rooms of Addison and Olson without legal warrant, completely destroys the trial thereafter conducted at which information testified to by witnesses, may also have been reflected in the filing cabinets. This they contend although no showing is made as to any item or document which, after having been examined by the United States following such seizure by the state officials, was introduced or testified to at the trial.

Upon this charge being made in the appellants' brief, the United States again filed its motion for taking testimony to supplement the record in order to complete the showing as to the alleged illegal search and seizure and its effect on the United States' prosecution. Appellants strenuously opposed such proceeding, although appellants in their brief make the statement: "Should it so decide to do, this court has the power to vacate and remand to the court below for the taking of further testimony relative to the question of unreasonable search and seizure. Cf. Jones v. United States, 362 U.S. 257, [80 S.Ct. 725, 4 L.Ed.2d 697]."

Again, we need not consider the propriety or legality of such a proceeding. We think the cases clearly hold that the burden is on the accused attacking the propriety of evidence used against him to establish the fact that it was in fact illegally obtained. This, we think, is the clear teaching of Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307, and Lawn v. United States, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321. In the Nardone case, a wire tapping case, the court said: "The facts improperly obtained do not 'become sacred and inaccessible. If knowledge of them is gained from independent source they may be proved like any others, but the knowledge gained by the government's own wrong cannot be used by it' simply because it is used derivatively." 308 U.S. 338, 341, 60 S.Ct. 266, 267, The court also said: "[T]he trial judge must give the opportunity, however closely confined, to the accused to prove that a substantial portion of the case against him was the fruit of the poisonous tree." Since this case clearly states that it is open to the government to prove by untainted evidence the same facts that may have been shown by tainted evidence, there is clearly a burden on the party contending that the evidence is inadmissible on the trial to point specifically to the basis for the exclusion.

In Lawn v. United Sates, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321, the Supreme Court stated:

"At no time did counsel for petitioners point specifically to any evidence offered at the trial which they claimed was derived from materials furnished by petitioners before the 1952 grand jury [in violation of their constitutional rights]."

As in Nardone, the Court, it seems to us, clearly placed upon the defendant in the criminal case the burden of showing that evidence derived as a result of leads or clues obtained from an unlawful search and seizure was actually used against him at his trial. No such showing was made in this case.[2]

■ Before dealing with the remaining grounds urged by the appellants for reversal of their convictions, we consider it necessary to relate in brief and summary form what we believe it can fairly be said the jury had a right to find under the evidence submitted to it. This, at the same time, will indicate the nature of the charges and the theory of the prosecution.

The jury could well believe that the defendants who were convicted devised and participated in a scheme to raise money from persons who could be "sold" on the possible prospects of great wealth from uranium mining, timber sales and nickel mining. There was ample evidence, with which all of these appellants were adequately connected, that this plan or scheme contemplated the representation to the prospective "investors" or "lenders," that the appellants or their interests, consisting of three corporations, owned or controlled extremely valuable uranium properties, that they owned or controlled equipment called the "Benson Uranium Upgrader" which at a total cost of some $165,000 could produce enough usable uranium, known as "yellow cake" (the term for the refined uranium product purchased by the Atomic Energy Commission) to produce profits of as much as $86,000 per day; that the appellants needed a very small amount of money, in some instances some $17,000 and in others less than $50,000, to complete the reworking of the Benson Uranium Upgrader so that it could immediately begin to produce this wealth for the participants; that the investors or lenders eagerly made money available to the appellants principally in return for promissory notes, but with promises, either expressed in an agreement in writing or by verbal assurances, of added rewards, and that in the specific instances charged the United States Mails were used in connection with the acquisition of the funds or the mailing of the papers connected with the scheme. The jury could also believe from the copious testimony to that effect that the representations as to the character of the properties touching on their quality as uranium properties were false; that the amount needed to put the Benson Uranium Upgrader into completion was falsely represented, that the Upgrader was in fact without value in the prospective use to which appellants represented it would be put.

Likewise, the jury could believe from evidence adduced before it that false representations were made as to the nature of nickel deposits held by appellants or their associate companies and that false representations were made with respect to the ability of the appellants to sell substantial amounts of timber from lands on which they did not have timber rights.

2. Once again, we need not consider the propriety of the subsequent hearing by the District Court for the purpose of supplementing the record against which appellants inveigh so heavily. However, it is of interest to note that upon such hearing the trial court made an express finding that none of the materials seized by the State Agents, and later shown to the United States, were actually introduced or formed the basis for the proof offered by the United States on the trial of these appellants. Moreover, the District Court found that appellant, Addison, had expressly consented to the reviewing of this seized material by the United States, and no effort was made to distinguish between the materials seized from Addison and those seized from or claimed by Olson.

Moreover, the jury could believe that specific representations as to an interest expressed in the project by a nationally known brokerage and investment house, which was represented to be at least considering offering $18,000,000 for a 49% interest in the holdings, were false. There were other specific representations made which were material according to facts testified to by witnesses which, if believed by the jury, would have justified their finding a verdict of guilt against each of the appellants.

We have carefully considered specific contentions that as to each of the appellants the testimony was insufficient to justify the submission of the case to the jury and we find that there is no merit in this contention.

Prior to the trial the appellants moved for a change of venue. The trial court considered this motion along with others filed at that time. Although it is clear such a widespread activity as had been engaged in by appellants, in which many hundreds of investors had become involved, brought about some newspaper publicity, when the charges were filed in the district court, the trial court decided that a fair and impartial jury could be found to try the case. The Trial Judge noted that the Dallas Division had a population of some 700,000 persons, of whom about 300,000 resided in rural areas. He also offered appellants an opportunity to file additional affidavits which they decided not to do.

■■■■ The motion for transfer of venue was addressed to the discretion of the trial court and should not be overturned in the absence of a clear showing of abuse. Greenhill v. United States, 5th Cir., 298 F.2d 405; Mayo v. Blackburn, 5th Cir., 250 F.2d 645, cert. denied. In the Greenhill case we stated, "The decision of the trial court on such a motion will be affirmed where as here no abuse of discretion is shown, and lack of abuse of discretion is buttressed whereas here there was no showing in the course of the voir dire examination that any adverse publicity had affected the ability of the jurors to reach an un-

prejudiced decision." 298 F.2d 405, 411. It is to be noted that upon the voir dire in this case the only two members of the panel who stated that they had formed opinions as to the guilt or innocence of the accused were excused.

■■■■ We think the same principle applies to the contention by the appellants that the trial court erred in not granting their requested charge dealing with the jury's duties with respect to newspaper publicity and their contention that the charge given did not adequately caution the jury to keep their minds free from outside influences including instructions not to read the newspapers. The Supreme Court in the recent case of Marshall v. United States, 360 U.S. 310, at page 312, 79 S.Ct. 1171, at page 1172, 3 L.Ed.2d 1250, set out the rule which is applicable to the problem of prejudicial press commentary:

"The trial judge has a large discretion in ruling on the issue of prejudice resulting from the reading by jurors of news articles concerning the trial. * * * Generalizations beyond that statement are not profitable, because each case must turn on its special facts."

We have carefully considered all of the comments made by the trial court on the several occasions when he cautioned the jury not to read the newspapers and not to base their decisions on anything other than the evidence adduced on the trial and we conclude that the appellants have made no showing that in this respect the trial court abused its discretion.

On the first day of the case, the court gave the following instruction to the jury:

"We have some fine enterprising newspapers here and they like a good story, and if they run across that witness on the outside they may get all of his story and print it, and nobody can blame them for it. But it is not sworn to, and yet it may bear on this case and you may read it. The only thing I can say to you is that we must either lock you up

and shut you off from the newspapers and keep you together until this trial is over, or else put you on your honor not to listen to anybody's conversation, and not to read any part of a newspaper that relates to this trial until it is over."

The court then followed this language by the statement that if the jurors did read the newspaper and found themselves tempted to talk about it, it would be necessary for the court to lock them up during the rest of the trial.

At the end of the case, the court also instructed the jury in part, as follows:

"If during the trial or from any ruling of the Court during the proceedings you have reached any idea as to what the Court thinks or believes as to the guilt or innocence of the accused you will disregard that, because you are the judges of the fact, and the Court, that is, the judge on the bench, is the judge of the law. The verdict must be your own and not what the judge or someone else may think or believe. You will, therefore, not accept the law from the lawyers or from any other source, except from this charge, which is now given you, *and you will not accept any evidence except that which has been given you here from the witness stand.*"

Again, later in the charge, the Court stated:

"I want to again express my approval of the attention you have given in this long trial and in that connection I would like to say that the press, *you remember in the beginning of this trial, I cautioned you against taking as evidence some statement that is contained in the press which may be in addition to the evidence,* and so far as we have seen there has been no act on the part of the press that would be subject to criticism, there has been nothing in them (the press) that you didn't know, if you had read them."

We believe that this instruction was adequate for the purpose of cautioning the jury not to read newspapers dealing with the trial and not to consider anything other than the sworn testimony in the making up of their verdict. Apodaca v. United States, 5th Cir., 200 F.2d 775, 777; Ford v. United States, 5th Cir., 233 F.2d 56, 61. From this, we think, it follows that there was no error in the Court's failure to charge in the specific language suggested by appellants' requested charge. Moreover, no exception was taken by appellants to the failure of the trial court to give this charge, as we have held is required to preserve such ground of appeal. Estep v. United States, 5th Cir., 223 F.2d 19, 22, Cert. denied, 350 U.S. 863, 76 S.Ct. 105, 100 L. Ed. 765. In that case we stated, "Under that rule [Rule 30, F.R.Crim.P., 18 U.S.C.A.], in order to put the trial court in error, it is necessary that the defendant precisely state the ground of his objection and that the ground stated point out an error prejudicial to the defendant."

 There is no merit in the ground of appeal criticizing the admission into evidence of a tape recording of a conversation or speech made by Addison. It was a tape recording which was made by one of the invited guests by the use of a small radio which was tuned in with a receiving instrument that made a mechanical transcription of the speech. Appellants do not dispute the general proposition that such a tape recording is admissible in evidence. Their principal objection is that approximately one-half of the tape was defective and the speech or conversation recorded there was not available for the trial. We agree with what was said by the Court of Appeals for the Third Circuit in United States v. Schanerman, 150 F.2d 941, 944, "There would be no more valid reason for exclusion of the mechanically recorded conversations than there would be for excluding competent conversations, overheard in part, by human witnesses." See also Monroe v. United States, 98 U.S.

App.D.C. 228, 234 F.2d 49, where at page 55 the Court said, "Unless the unintelligible portions are so substantial as to render the recording as a whole untrustworthy the recording is admissible, and the decision should be left to the sound discretion of the trial judge." Here there was ample basis for the trial court's finding that the part that was reproduced was an accurate reproduction of the conversation it purported to reproduce.

■ Appellants complain in a sort of catch-all ground for reversal that * * * "the cumulative effect of substantial prejudicial errors in the course of the trial below denied defendants of fair and impartial trial." Under this general comment, the appellants speak of the eliciting of inflammatory and prejudicial testimony by the prosecution, coupled with its unfair questions and comments, under which heading they complain of leading questions by Government counsel, some of which were objected to, some of which went unchallenged. They complain that the questions answered by some of the witnesses indicated the extreme hardships suffered by them as a result of their investments with the Addison scheme. Some of these bits of personal experience were clearly consistent with the testimony of other witnesses to the effect that Addison and his associates promised to certain noncompensated employees to provide for their personal maintenance and to others the payment of doctor's bills and hospital fees and to others that their children would be the best dressed children in school, etc. Another subdivision, under this heading, complains that the trial court * * * "in its rulings on evidence, its comments from the bench, and its handling of the speed and conduct of the trial, substantially prejudiced defendants' rights to a fair and impartial trial." We have carefully examined the criticized portions of the record and recognizing that here was a record of 2400 pages of trial testimony extending for nearly a month, we conclude that there is no basis for implying that the trial court so favored the prosecution in the method of his handling of the trial as to work any prejudice to the defendants.

■ In discussing the foregoing basis for appeal, the appellants state, "It is conceded that perhaps no single one of the errors set forth below would itself warrant reversal, but it is submitted that en masse they constituted prejudicial and reversible error." Appellants cite the case of Getchell v. United States, 282 F.2d 681, 5th Cir. to support this contention. Reference to the Getchell case will show that the Court there considered that the Government's case against the accused was weak in the extreme. The weakness of the proof was referred to by the Court in causing it to feel that the errors there committed, while possibly not individually strong enough to work a reversal did, cumulatively, indicate that the accused may have been convicted by the jury on something other than the proper inferences to be drawn from the sworn testimony. Here we have no such situation. This is not a weak case against the appellants. There is ample evidence to support the jury's verdict as to the representations and as to the falsity of sufficient representations to constitute fraud, and, in those counts which require it, as to the mailings in furtherance of the scheme. In such a situation we take the law to be as recently stated by this Court in Ahlstedt v. United States, 5th Cir., 315 F.2d 62. There we said:

"While language has occasionally cast this [28 U.S.C.A. § 2111] in terms of a reversal unless nonprejudicial effect 'affirmatively' appears, * * * the Supreme Court has pointed out in Kotteakos v. United States, 1946, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557, that in criminal cases the question is what effect the error had or reasonably may be taken to have had upon the decision of the jury. That decision teaches that an appellate court must determine what the error meant to the jury in

relation to all else that happened and:

> " 'If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress.' "

See also Glasser v. United States, 315 U.S. 60, 83, 62 S.Ct. 457, 470, 86 L.Ed. 680.

> "The trial was long and the incidents relied on by petitioners few. We must guard against the magnification on appeal of instances which were of little importance in their setting."

■ We have given careful consideration to these contentions of prejudicial error, no one of which rises to the dignity of being prejudicial in and of itself, and conclude in the context of the long trial, most of which was conducted in an exemplary fashion by both court and counsel, that such errors as occurred did not influence the jury. Since they did not affect the substantial rights of the parties we conclude that this ground of appeal cannot be supported.

■ Appellants contend that a seizure and impounding of defense files and records "during the course of the trial" deprived the defendants of their right to counsel, their right to a defense and due process of law. They contend that on the motion of the Referee in Bankruptcy, the files and records were taken into custody by the United States Marshal when the defense "had been under

way but a few days." In their brief they contend that the defense had not completed its case. The record is silent as to when this act occurred. It is plain, however, that no complaint was made about it by the appellants until February 15, 1962, *which was one day after both parties announced that their cases had been closed.* Appellants filed a motion for mistrial charging this seizure, but the motion itself is silent as to when the seizure took place. The Government contends in its brief that the seizure did not occur until the morning of February 15th. So far as it appears from the record, the trial court did not pass on this motion. Clearly, if the point is to have any substance it must be supported by the record. However, in the absence of any record proof to support appellants' contention, the Government again filed its motion to supplement the record by undertaking to show the true facts. Since we do not pass upon the validity or the propriety of such a proceeding because of the failure of the appellants to support their contention by record references, it is not necessary to point to the findings of the trial court upon the supplemental hearing [3] to warrant our holding that there is no merit in this contention.

It is plain that the indictment adequately charged the offenses, the evidence adequately warranted the jury's determination that each of the defendants played his assigned role in the schemes outlined and it does not appear that any prejudicial error occurred during the long trial.

The judgment of conviction and the sentences must therefore be

Affirmed.

---

3. The proof offered by the Government and accepted by the trial court as true was to the effect that both sides had announced that their cases had been closed the day before the Marshal took custody of the records.