NO. 07-01-00232-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



APRIL 26, 2002


______________________________



FIDENCIO S. VASQUEZ
,




 Appellant


v.



THE STATE OF TEXAS, 




 Appellee

_________________________________



FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2001-435,732; HON. JIM BOB DARNELL, PRESIDING


_______________________________



Before BOYD, C.J., QUINN, and REAVIS, J.J. 

 Fidencio S. Vasquez (appellant) appeals his conviction for aggravated sexual
assault. Through six issues, he contends that the evidence was insufficient to support the
conviction and that the trial court erred in: (1) allowing the introduction of extraneous
offenses; (2) allowing the introduction into evidence of a videotape containing his
confession; and (3) failing to dismiss the charge against him after the State failed to comply
with the Interstate Agreement on Detainers Act. We overrule the issues and affirm the
judgment of the trial court. 


Background A jury found appellant, Fidencio Vasquez, guilty of aggravated sexual assault. The
evidence at trial indicated that complainant, appellant's adopted daughter Amy, was
sexually assaulted by him repeatedly over the course of nine years. Appellant married
Amy's mother, Debbie, when Amy was four years old. Six years later appellant adopted
Amy and her two sisters, Heidi and Sarah. Two other children were subsequently born of
the marriage, Juan and Anna. 

 The first such sexual contact between the appellant and Amy was alleged to have
occurred when Amy was ten years old while the family was living in North Carolina. The
sexual contact between appellant and Amy continued throughout the following nine years. 
During that time the family moved constantly. From North Carolina, the family moved to
Georgia, Tennessee, Indiana, and then to Texas. During a majority of this time, appellant
made sexual contact with Amy about two times per week. This sexual contact consisted
of appellant rubbing his penis against Amy's vagina, having sexual intercourse with her,
and having her perform oral sex on him. Appellant left Texas for Colorado because of
employment opportunities. A couple of weeks after his departure, Debbie and Amy drove
to Colorado under the auspices of delivering some tools to appellant. However, after
arriving in Colorado, Amy discovered that she was to stay there with appellant. Thereafter,
appellant continued to have sexual contact with her.

 While in Colorado, Amy was successful in contacting her boyfriend Jonathan Ayala,
who was living in Texas, and informed him of her circumstances. He contacted the
Lubbock Police Department and explained Amy's situation. He was directed to Detective
Steen (Steen) who instructed Jonathan to have Amy contact him. While at a mall with
Juan, Amy called Jonathan, and he gave her Steen's phone number. Upon calling Steen,
Amy went to the Lakewood Police Department where she gave the police a statement
regarding the assaults. Thereafter, appellant went to the police station, underwent
interrogation, and ultimately confessed to engaging in sexual contact with his daughter. 
The State of Colorado prosecuted and convicted appellant for criminal incest. 
Subsequently, the State of Texas indicted and eventually convicted appellant of
aggravated sexual assault.

Issue 1: Sufficiency of the Evidence

 In his first issue, appellant challenges the legal and factual sufficiency of the
evidence. Appellant claims the evidence was insufficient to prove that he threatened Amy
with force or violence, or that he used any words or acts to place her in fear of death,
serious bodily injury, or kidnaping during the time he was in Lubbock County. We overrule
the issue.

 Standard of Review

 The standards of review applicable to questions of legal and factual sufficiency are
well-settled and need no explanation. We find it adequate to merely cite the parties to King
v. State, 29 S.W.3d 556 (Tex. Crim. App. 2000) and Clewis v. State, 922 S.W.2d 126 
(Tex. Crim. App. 1996). 

 Application of Standard

 To secure a conviction for aggravated sexual assault, the State must prove beyond
reasonable doubt that the accused 1) intentionally or knowingly caused the sexual organ
of another person, without that person's consent, to contact or penetrate the mouth, anus,
or sexual organ of another including the actor and 2) by acts or words places the victim in
fear that death, serious bodily injury, or kidnaping will be imminently inflicted on any
person. See Tex. Pen. Code Ann. §22.021(a)(1)(A)(iii) and (a)(2)(A)(ii) (Vernon Supp.
2001). 

 Appellant argues that the "on or about" date mentioned in the indictment is crucial
in determining the sufficiency of the evidence. Allegedly, since the indictment was
presented on February 28, 2001, "the State could only rely on events which occurred after
February 28, 1996, five years before the date the indictment was presented." Appellant
had been in Colorado just over a month before being arrested there on November 2, 1996.
Therefore, appellant claims, "the State could only rely on events that occurred between
February 28, 1996, and October 1996, when appellant left for Colorado."

 Furthermore, appellant argues that "the evidence adduced at trial clearly established
that no [sexual contact] occurred in Lubbock County within the proper limitations period by
threatening Amy Vasquez with force or violence, [sic] nor did he use any words or acts to
place her in fear that death, serious bodily injury, or kidnaping would be imminently inflicted
on her." He argues not that no such contact occurred. Rather, he claims the evidence was
legally and factually insufficient to support the finding that he used force or threatened Amy
in compelling her to submit to his advances.

 In the context of an aggravated sexual assault, the victim's state of fear is normally
established through his or her own testimony. Lewis v. State, 984 S.W.2d 732, 734 (Tex.
App.-Fort Worth 1998, pet. ref'd). The defendant's conduct, i.e. acts, words, or deeds, is
then examined to determine whether it was the producing cause of such fear and whether
the subjective state of fear was reasonable in light of such conduct. See id. We find the
rationale in Graves v. State, 994 S.W.2d 238 (Tex. App.-Corpus Christi 1999, pet. ref'd,
untimely filed) instructive. The facts in Graves are similar to those at bar. In Graves, the
appellant asserted that evidence was insufficient to sustain his sexual assault conviction
because the victim was twenty years old at the time of the alleged offense and consented
to sexual contact with him. Id. at 243. At trial, the victim testified that she only consented
because Graves had struck her when she previously had refused his advances. The court
found that the appellant's demands carried an implicit threat that if she did not submit, she
would be beaten, as she had been on at least one prior occasion. The court reasoned
that:

 [t]o hold otherwise, would be to require sexual assault victims
who previously have been beaten for refusing the sexual
advances of their attacker to again be physically forced to
submit to the whims of the sexual predator or, at the very least,
compel them to make an express threat of force before such
person could be held accountable for their actions. This
indeed would be a travesty of justice. 


Id. at 244.

 As to the alleged want of evidence regarding a threat of death or seriously bodily
injury, we find of record evidence that, prior to moving to Lubbock County, appellant 1) had
been sexually assaulting Amy since she was ten, 2) repeatedly told Amy that if she told
anyone that "he would hurt [her] mom," 3) told Amy that if he found out she told someone
that "things would be worse," and 4) slapped Amy, pulled her hair, and threatened to throw
her from a car, took her to a motel, threatened to throw her up against the walls, made her
take her clothes off and have sex with him all because she had an "attitude problem" for
wanting to attend high school. So too do we have testimony from Amy illustrating that she
continued to submit to the sexual contact with appellant because she 1) was afraid
appellant would hurt her, 2) was afraid appellant would hurt her mother, 3) was afraid
appellant would make things worse for her, and 4) believed appellant would carry out his
threats if she did not submit.

 Appellant acknowledges that the State introduced evidence of both sexual contact
and penetration, but argues that no evidence was presented that he threatened Amy with
force or violence, nor did he use words to place her in fear of death, serious bodily injury,
or kidnaping, "within the proper limitations period." (Emphasis added). Despite appellant's
argument, Amy testified that while living in Lubbock County that she submitted to the
sexual contact because appellant would tell her that "if she [told], [he'd] hurt [her] mom or
things will get worse." The exact date of this statement is unclear. Yet, we cannot simply
ignore appellant's extensive pattern of threats and sexual assaults on Amy which do not
fall within the statute of limitations. Appellant's actions towards Amy prior to moving to
Lubbock County constitute a pattern of threats, physical abuse, and sexual assaults. The
evidence at trial established that the assaults began when Amy was ten and continued for
nine years. Appellant also repeatedly threatened Amy to dissuade her from telling anyone. 
Like the circumstances in Graves, this pattern created an implicit threat that if Amy did not
submit then appellant would fulfill the threats he had made. And, from this, a jury could
rationally conclude beyond reasonable doubt that appellant committed aggravated sexual
assault. See Tex. Pen. Code Ann. § 22.021 (stating the elements and punishment range
for aggravated sexual assault). Moreover, when tested against the entire record, the
finding is not manifestly unjust or clearly wrong. So, the verdict enjoys the support of both
legally and factually sufficient evidentiary support. 

Issue 2: Extraneous Offenses

 Appellant next argues that the trial court reversibly erred in allowing the State to
introduce extraneous acts during the guilt/innocence state of the trial. We overrule the
issue.

 Standard of Review

 In determining whether a trial court erred in admitting evidence, we apply the
standard of abused discretion. Wyatt v. State, 23 S.W.3d 18, 26 (Tex. Crim. App. 2000). 
That is, unless the decision fell outside the zone of reasonable disagreement, given the law
and pertinent circumstances, we must uphold it. Jones v. State, 944 S.W.2d 642, 651
(Tex. Crim. App.1996), cert. denied, 522 U.S. 832, 139 L.Ed.2d 54, 118 S.Ct. 100 (1997). 
Moreover, the law applicable to the admission of evidence like that at bar is well-settled. 
Same is inadmissible to prove the character of a person to show that the person acted in
conformity therewith. Tex. R. Evid. 404(b). However, it is admissible for other purposes,
such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or
absence of mistake. Wyatt v. State, 23 S.W.3d at 25. The admissibility of extraneous
offenses is determined by a two-part test. First, the trial court must determine whether the
extraneous offense is relevant to a material, contested issue in the case other than the
defendant's character. Montgomery v. State, 810 S.W.2d 372, 387-89 (Tex. Crim.
App.1990). Second, the relevancy value of the evidence must outweigh its inflammatory
or prejudicial potential. Id. at 388.


 Application of Standard

 Appellant argues that the trial court erred in allowing into evidence allegations
regarding appellant's "rape [of Amy] when [she] was ten and living in North Carolina; sexual
contact two or three times per week in Georgia; sexual contact two or three times per week
in Tennessee; taking [Amy] to a hotel, slapping her, threatening her, and having sex with
her while they lived in Indiana; taking her to a hotel in Lubbock; threatening her, and
engaging in sexual intercourse; and sexual intercourse including anal penetration while
living in Colorado." He claims that since Amy was nineteen at the time of the indicted
offense, that all references to prior sexual contact between appellant and Amy were
inadmissible extraneous offenses. (1) 

 We reiterate that Texas Rule of Evidence 404(b) states that evidence of other
crimes, wrongs, or acts is not admissible to prove the character of a person. But, it is
admissible to 1) establish some evidentiary fact, such as motive, opportunity, or
preparation, leading inferentially to an elemental fact or 2) rebut a defensive theory. Wyatt
v. State, 23 S.W.3d at 25. Furthermore, the Court of Criminal Appeals has held that "it has
long been the rule in this State that the jury is entitled to know all relevant surrounding facts
and circumstances of the charged offenses; an offense is not tried in a vacuum." Id.

 "Lack of consent" is an essential element of aggravated sexual assault. Garrett v.
State, 998 S.W.2d 307, 316 (Tex. App.-Texarkana 1999, pet. ref'd). Whether or not
appellant and Amy had consensual sexual contact was an elemental fact in this case. Id. 
The evidence that appellant continuously had sexual contact with Amy without her consent
and had threatened her in order for her to submit to same was not used to prove that
appellant was generally a child molester. In fact, during the guilt/innocence phasee, the
court specifically forbade Amy from alluding to her father's sexual assaults upon another
daughter who was under 17. Amy's testimony about appellant's prior abuse and sexual
assaults was used to explain why, that although she did not consent to the sexual contact,
she nevertheless submitted to appellant's demands, i.e. she submitted because of the
submissive mind set or mental disposition and fear created from years of threats and
physical abuse. Thus, the evidence was admissible for a purpose other than to illustrate
appellant's character and conformity therewith, and the trial court did not abuse its
discretion in admitting it. 

 Since the evidence of the prior sexual contact between appellant and Amy is both
relevant to a material contested issue in the case other than the appellant's character and
that it's relevancy value outweighs its inflammatory or prejudicial potential, we find no
abused discretion. We overrule appellant's issue.

Issue 3: Limiting Instruction

 Appellant argues that even if the trial court's ruling regarding the extraneous
offenses was proper the trial court should have given a limiting instruction at the time the
evidence was admitted. We overrule the issue.

 Appellant made a request for a limiting instruction during the State's case-in-chief
when it introduced evidence regarding the sexual assaults committed and the threats made
while the appellant and Amy were living in Tennessee. The trial court denied the request
stating that "[it] [would] instruct the Jury concerning the evidence at the conclusion of the
evidence." Appellant requested same when the State introduced evidence of the threats
and sexual assaults which occurred in Colorado. Again appellant's request was overruled. 
After appellant requested and was granted a running objection, the State introduced
evidence of further sexual assault and threats which occurred in Lubbock County prior to
appellant moving to Colorado. 

 Appellant claims that "[t]he court's refusal to grant a contemporaneous limiting
instruction when the extraneous evidence was first introduced because the jury would be
so instructed at the conclusion of the evidence was explicitly held to be erroneous and
reversible" by the Texas Court of Criminal Appeals in Rankin v. State, 974 S.W.2d 707
(Tex. Crim. App. 1996). And, "while the trial court may have had discretion in deeming
over thirteen years of extraneous offenses as relevant and more probative than prejudicial,
the trial court did not have discretion in delaying the delivery of a limiting instruction until
the close of evidence when it was properly requested and could [have] been given at a
more opportune time."

 Prior to appellant's request for a limiting instruction, the State had introduced the
following testimony: 1) appellant's first sexual contact with Amy occurred when she was
ten; 2) Amy first informed her mother of the sexual contact when Amy was 16; 3) appellant,
in an attempt to "'bribe'" Amy not to tell anyone of the sexual contact, said that she "could
be a model and have boyfriend;" 4) after Amy's older sister left the home, appellant would
"come up to [her] room at night and rub up against her" meaning that "[appellant] would rub
his penis against [her] vagina" without her consent; 5) while the family was in Georgia, the
sexual contact between appellant and Amy continued "two, three times a week" and that
"afterwards [appellant] would tell [her] that if [she] told anybody, he would hurt [her] mom,
or if he found out that [she] told anybody things would be worse;" 6) after moving to
Tennessee the sexual contact continued "two or three times a week;" and, 7) appellant
pulled her out of school because he found a note in Amy's purse from a "guy that [she]
like[d]." Because this evidence was presented before appellant requested a limiting
instruction, it was admitted for all purposes. Hammock v. State, 46 S.W.3d 889, 892 (Tex.
Crim. App. 2001). And, because it had been admitted for all purposes, we do not see how
the subsequent admission of like evidence without a contemporaneous limiting instruction
harmed appellant. This is not to say that no error occurred but rather that we perceive no
harm from it. 

Issue 4: Involuntary Confession

 Appellant next contends that the trial court erred in introducing the videotape which
contained his confession because the confession was involuntarily given. It was allegedly
involuntary because it was the result of a promise which was unduly coercive. (2) We
overrule the issue.

 Standard of Review

 Whether the trial court erred in refusing to suppress a confession depends upon
whether it abused its discretion. Villareal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App.
1996). And, we will not disturb the ruling if supported by the record. Arnold v. State, 873
S.W.2d 27, 34 (Tex. Crim. App. 1993), cert. denied, 513 U.S. 830, 130 L.Ed.2d 51, 115
S.Ct. 103 (1994). Furthermore, the trial court is the sole factfinder at the hearing. Id. This
entitles it to judge the weight and credibility of the witnesses and their testimony and accept
or reject all or any part of the testimony of any witness, including those of the State or the
defense. Snow v. State, 721 S.W.2d 943, 946 (Tex. App.--Houston [1st Dist.] 1986, no
pet.). So, we must defer to its resolution of pivotal factual disputes. 

 Next, a suspect's statement may be used against him when it is freely and
voluntarily made without compulsion or persuasion. Tex. Code. Crim. Proc. Ann. art.
38.21 (Vernon Supp. 2002); Campos v. State, 977 S.W.2d 458, 464 (Tex. App.--Waco
1998, no pet.). The determination of whether a statement is voluntary must be based on
an examination of the totality of the circumstances surrounding its acquisition. Bordman
v. State, 56 S.W.3d 63, 69 (Tex. App.-Houston [14th] 2001, no pet.). 

 Finally, Texas law has long barred the use of a statement induced by a promise of
someone in authority. Id. A statement is involuntary and thus inadmissible, if it is induced
by a promise that is 1) of some benefit to the defendant, 2) positive, 3) made or sanctioned
by a person in authority, and 4) of such an influential nature as to be likely to influence the
defendant to speak untruthfully. Creager v. State, 952 S.W.2d 852, 856 (Tex. Crim. App.
1997). 

 Application of Standard

 Appellant argues that he confessed because the interrogating officers promised to
keep what he said confidential. The video tape of the confession does contain the
following passage: ". . . private confidential police matter and it stays that way. Okay? You
have to be, you have to be content to know that's what's going to happen. Okay? No one
knows why you're . . . ." Yet, what was said before or after is unknown for the tape did not
capture it. (3) And, because the officer did not remember the context in which the statement
was made, he could only speculate as to why he made it. Nevertheless, after the comment
and the discovery of the malfunctioning recorder, the officer returned to the interrogation
of appellant. When he did so, he expressly asked appellant if any promises had been
made by him (the officer) or deals entered into by the two during the time of the
malfunction. Appellant replied that none had been made. Furthermore, this particular
question and response were recorded on the video tape. So, at the very least, there
existed a question of fact regarding the existence of any promise upon which appellant
could base the supposed coercion. Again, appellant represented on tape that there was
no such promise. And, to that extent, the trial court may well have agreed with appellant
and found that no promise had been made.

 Furthermore, the utterance falls short of insinuating that appellant's confession
would or could not result in his prosecution or would somehow be the key to his freedom. 
The officer clearly informed appellant that his investigation was still a "police matter." That
the interrogation involved a "police matter," that appellant was told as much, that appellant
knew the accusations centered upon his relationship with Amy, that appellant knew Amy
had contacted the police, and that appellant had previously been informed that anything
he said could be used against him constitutes some evidence upon which the trial court
reasonably could have decided that the representation was not of the ilk which would have
caused him to admit to a crime he did not commit. So too could it have reasonably
determined that the context was not of the type leading one to believe that the authorities
would forego prosecution if he confessed.

 In short, the record evidence was far from certain as to the existence of a promise
and its effect. And, because it was less than definite, the trial court had the discretion to
weigh it and resolve the factual questions it created. Nor can we say that the ultimate
resolution of the court lacked support in the record. Thus, precedent bars us from
interfering with the decision. Issue 5: Faulty Video Equipment

 Appellant next claims the trial court erred in admitting the videotape because the
videotaping equipment was not functioning properly. We overrule the point.

 Standard of Review

 Whether to admit a video or audio tape recording lies within the trial court's
discretion. State v. Schaeffer, 839 S.W.2d 113, 118 (Tex. App.--Dallas 1992, pet. ref'd). 
In other words, the appellate court must uphold the trial court's ruling if it was within the
zone of reasonable disagreement. Burden v. State, 55 S.W.3d 608, 615 (Tex. Crim. App.
2001). In addition, the appellate court must review the trial court's ruling in light of what
was before the trial court at the time the ruling was made. Hoyos v. State, 982 S.W.2d 419,
422 (Tex. Crim. App. 1998).

 Application of Standard

 Appellant argues that when he was questioned by the officers from Lakewood
Police Department that he was under custodial interrogation. Because the videotape
contains appellant's confession made as a result of custodial interrogation, the Texas Code
of Criminal Procedure sets forth certain requirements that must met before the statement
can be used against the him. Before a statement can be used, the article requires the
following: 1) an electronic recording must be made; 2) before the statement, but during
the recording, the accused must be admonished as to his rights to remain silent, to have
counsel, to terminate the interview, to have counsel present at the interview, and to have
an examining trial; 3) a predicate must be laid to show that the recording device was
functioning, the recording is accurate and unaltered and the operator competent; 4) the
voices on the tape must be identified; and 5) the accused must be provided with a copy
at least twenty days before trial. Tex. Code Crim. Proc. Ann art. 38.22 § 3; Taylor v.
State, 7 S.W.3d 732, 740 (Tex. App.-Houston [14th Dist.] 1999, no pet.). Furthermore,
according to appellant, the tape at bar was inadmissible because it omitted a large
segment of the interrogation by the police. That is, because that segment was omitted, the
tape was not shown to be accurate. We disagree. 

 During a pretrial hearing to determine the admissibility of appellant's videotaped
confession, the trial court heard the testimony from Agent Swainson and Detective Tenney
from the Lakewood Police Department, the two police officers who procured and
videotaped appellant's confession. Detective Tenney testified that the interviewing process
he employs when questioning a suspect consists of two parts: an interview and an
interrogation. After finishing the interview, Detective Tenney "looked in to check on the
recording equipment and discovered that the tape had stopped." So, he "restarted the tape
and went back into the interview room and went over the conversation that [he and
Swainson] previously had with Mr. Vasquez." But, before questioning appellant for the third
time, Detective Tenney established on the videotape that appellant had not been promised
anything or that any deal had been made. From this, the trial court could have ruled that
the omission was accidental and sufficiently explained by the officers to nonetheless be
an accurate recording of the conversations which were actually recorded. See Quinones
v. State, 592 S.W.2d 933, 944 (Tex. Crim. App. 1980), cert. denied, 449 U.S. 893, 66
L.Ed.2d 121, 101 S.Ct. 256 (1980)(holding that an altered tape is admissible if the
alteration is accidental and sufficiently explained "so that its presence does not affect the
reliability and trustworthiness of the evidence"). Furthermore, appellant does not suggest
that the omitted portions of the tape somehow contradict or negate the fact that he
confessed or the truthfulness of his confession. Given this, we cannot say that the trial
court abused its discretion in admitting the recording. See Addison v. United States, 317
F.2d 808, 815-16 (5th Cir. 1963) (involving the admission of an audio tape half of which
could not be heard and holding that the tape was admissible since the circumstances
illustrated that the part reproduced was an accurate reproduction of the conversation it
purported to record). Issue 6: Interstate Agreement on Detainers

 Finally, appellant argues that "[s]ince the trial court had notice and the Lubbock
County District Attorney's Office had notice that appellant was requesting a disposition of
the case which caused the Lubbock County Sheriff's Office to place a detainer on
appellant, the cause he was being held on should have been dismissed with prejudice after
they failed to dispose of the appellant's case within 180 days." We overrule the issue.


 Standard of Review

 The denial of a defendant's motion to dismiss an indictment under the Interstate
Agreement on Detainers (IADA) is a question of law reviewed de novo and the factual
findings underlying that decision are reviewed on a clearly erroneous standard. Lindley v.
State, 33 S.W.3d 926, 930 (Tex. App.-Amarillo 2000, pet. ref'd), citing United States v.
Hall, 974 F.2d 1201, 1204 (9th Cir.1992).

 Application of Standard 

 The original Lubbock County indictment for which defendant was arrested and
detained in Colorado beginning in 1996 was based on cause 96-423,611 involving an
alleged aggravated sexual assault that occurred on or about January 31, 1996. The State
of Texas re-indicted the defendant in cause number 2001-435,652 on February 14, 2001,
adding a second count of aggravated sexual assault again occurring on or about January
31, 1996. Cause number 96-423,611 was then dismissed on the State's motion on
February 15, 2001. On February 28, 2001, the defendant was re-indicted in Cause 2001-435,732, and the indictment alleged a single count of aggravated sexual assault occurring
on August 1, 1996. It was the prosecution of the latter indictment that the resulted in the
conviction of appellant. 

 While incarcerated in Colorado, the State of Texas placed a detainer on appellant
on March 3, 1997. On July 28, 2000, the Lubbock County Sheriff's Office placed a second
detainer on appellant. Appellant argues that since the Lubbock County District Clerk
received notice of his Motion for Disposition and Detainer on September 18, 2000, and the
Lubbock County District Attorney's Office received same on September 24, 2000, that his
case should have been disposed of by March 23, 2001. The State subsequently dismissed
the charge and a filed a new charge. Appellant contends that "[i]f a trial court allows this
practice, the Detainer Act has no value. A person can be held on the detainer, and on day
179, the State can file a new charge as long as it is within the statute of limitations." We
disagree.

 Each charge filed against appellant is different in that it alleges another crime
appellant committed. Each aggravated sexual assault the appellant committed against
Amy was a different crime for which appellant could be prosecuted. Vernon v. State, 841
S.W.2d 407, 410 (Tex. Crim. App. 1992); Crawford v. State, 696 S.W.2d 903, 905 (Tex.
Crim. App. 1985). The State dismissed the charges against appellant for the aggravated
sexual assault that allegedly occurred on or about January 31, 1996. The State re-indicted
appellant on February 28, 2001, for a distinct aggravated sexual assault which allegedly
occurred on or about August 1, 1996. Given that the State indicted, tried, and convicted
appellant for a crime distinct from that encompassed in the prior indictments and that the
conviction arose within 180 days of the date on which the February 28, 2001 was issued,
we find no violation of the IADA. 

 Additionally, to trigger application of the IADA, the defendant must cause to be
delivered to the prosecuting officer and the court having jurisdiction over the prosecution
written notice of the place of his imprisonment and a request for a final disposition. Tex.
Code Crim. Proc. art. 51.14 art. III(a); Lindley v. State, 33 S.W.3d at 928. The inmate
bears the burden of demonstrating compliance with these prerequisites. Id. at 930. Here,
appellant has failed to show that he satisfied this burden. That is, the record fails to reflect
that a request for final disposition of the February 28th indictment was sent to either the
court or the Lubbock County District Attorney's office. Therefore, the trial court's decision
to refuse dismissing the motion was not clearly erroneous.

 Accordingly we affirm the judgment of the trial court.



 Per Curiam


Do Not Publish.









 
1. In his brief, Appellant addresses the inapplicability of Texas Code of Criminal Procedure art. 38.37,
which applies to proceedings in the prosecution of a defendant for an offense such as the one at bar, if
committed against a child under the age of 17. Given that the indicted offense occurred when Amy was 19,
the State was unable to use art. 38.37 to introduce the evidence of appellant's other "crimes, wrongs or acts"
committed against her prior to her seventeenth birthday.
2. Appellant does not argue that he was duped, deceived, or tricked into confessing but that his
admissions resulted from a promise sufficient to overcome his will to be truthful. Thus, we do not address
whether trickery or the like occurred.
3. As will be discussed further when we address the ensuing point of error, the officers said that the
tape recorder stopped and that is why the context to the conversation was missing.