**UNITED STATES of America, Appellee,**

v.

**David MATHIS, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Samuel MOORE, Appellant.**

**Nos. 76–1383, 76–1384.**

United States Court of Appeals, Fourth Circuit.

Argued Sept. 16, 1976.

Decided Nov. 19, 1976.

Rehearing Denied Jan. 20, 1977.

Certiorari Denied Feb. 22, 1977.

See 97 S.Ct. 1140.

Philip Stein, Washington, D.C., for David Mathis.

Courtland K. Townsend, Jr., Rockville, Md., for Samuel Moore.

Robert A. Rohrbaugh, Asst. U.S. Atty., Baltimore, Md. (Jervis S. Finney, U.S. Atty., Baltimore, Md., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and WINTER and BUTZNER, Circuit Judges.

PER CURIAM:

David Mathis and Samuel Moore both appeal their convictions for armed bank robbery. They assert numerous grounds for reversal, but we find none meritorious. We affirm.

I.

 Defendants' principal argument is that the district court committed reversible error in permitting the testimony of Karen Jones, given at a previous trial in which a mistrial was granted, to be read to the jury. Karen Jones was not available to testify in person because she could not be located; inadvertently she had been released from a District of Columbia penal institution pursuant to a court order requiring the release of another prisoner bearing the same name.

Jones' prior testimony was admissible under Rule 804 of the Federal Rules of Evi-

dence if her attendance at the trial could not be procured by process or other reasonable means. Rule 804(a)(5). The record shows that reasonable efforts were made to find her, but to no avail. *Motes v. United States*, 178 U.S. 458, 20 S.Ct. 993, 44 L.Ed. 1150 (1900) is inapposite. In the instant case, unlike *Motes*, the disappearance of Jones was due to inadvertence, not reckless disregard of an obligation to produce her, and there is no evidence that the prison official who released her knew that she would be needed as a witness.

## II.

■ We see no error in the use of a statement of a witness made when he pleaded guilty to impeach his testimony in this trial. Federal Rule of Evidence 410 and Rule 11(e)(6), F.R.Crim.P., only prohibit statements made in conjunction with a guilty plea from being used (1) against the person who made the plea, and (2) when that person has withdrawn the guilty plea. In the instant case, neither condition was met. The witness had not withdrawn his guilty plea and the statement was not used against him, but was used collaterally for purposes of impeachment.

## III.

[4] Defendants' remaining contentions are also lacking in merit. The district

court's requirement that peremptory challenges be exercised from a list of jurors rather than from the box is sanctioned by *Pointer v. United States*, 151 U.S. 396, 14 S.Ct. 410, 38 L.Ed. 208 (1894). *See also Amsler v. United States*, 381 F.2d 37 (9 Cir. 1967), and *Carbo v. United States*, 314 F.2d 718 (9 Cir. 1963), cert. denied, 377 U.S. 953, 84 S.Ct. 1626, 12 L.Ed.2d 498 (1964).

■ The fact that the district judge presided at the trial of a codefendant is no ground for disqualification, especially when no affidavit of bias or prejudice was filed. The photographic lineup was not impermissibly suggestive. A newspaper article connecting a witness to a robbery was inadmissible hearsay, even for purposes of impeachment.

AFFIRMED.

## ON PETITION FOR REHEARING AND SUGGESTION FOR REHEARING EN BANC

WIDENER, Circuit Judge, dissenting:

I respectfully dissent from the court's denial of rehearing.

The absence of Karen Jones from Mathis' second trial, in which her highly damaging prior testimony [1] was introduced against the defendant, was caused by the sole negli-

---

1. Following are excerpts from Karen Jones' testimony read to the jury at Mathis' second trial:

   "Q  Now, did you have occasion during January of this year to see Mr. Mathis or Mr. Moore at your apartment?
   "A  Yes, I did.
   "Q  When was that?
   "A  It was approximately on January 6th. They came to my house with some other people, James Stroy, Sam Savage, Jerome Tillery and Samuel Moore and David Mathis.
   "Q  And, you say they came to your house about the 6th?
   "A  Yes.
   "Q  And, did they stay?
   "A  They stayed until the 9th of January.

   .    .    .    .    .

   "Q  Did you hear any discussion among any of those individuals prior to the time they left the house on that day?

   "A  There was. They were discussing robbing a bank.

   .    .    .    .    .    .

   "Q  All right, what occurred when they returned to your apartment?
   "A  They went into what I would call my living room and they started counting money, but I left the room.  .   .   .  We went into the house and everyone stayed for a while and then, Mathis and Tillery left and the last two that left were Moore and James Stroy.
   "Q  Now, you said when they initially came back and went into the living room, you were there for a while?
   "A  Yes, I was there for a minute or two. I wasn't there that long.
   "Q  Did you hear any discussion at that time by any of those individuals?
   "A  I think they just talked the success they had at robbing a bank but I didn't stay there that long.
   "Q  Did you see any of the money at that time?

gence of the government in erroneously releasing her from federal custody.[2] In these circumstances, this case comes squarely within the holding of the Court in *Motes v. United States*, 178 U.S. 458, 20 S.Ct. 993, 44 L.Ed. 1150 (1900), which grounded its exclusion of prior testimony in the Confrontation Clause of the Sixth Amendment.

In *Motes* the government sought to introduce in a criminal trial a statement made by a then unavailable witness at a prior, preliminary hearing. The unavailability of the witness at trial was due to the negligence of the United States in removing him from custody prior to the trial and permitting him to stay in a hotel room in the custody of another government witness, rather than in jail. Before he was to testify, the witness disappeared, apparently having escaped, although he had been in the courthouse just prior to the trial.

The Supreme Court held that the introduction of the prior testimony violated the defendants' Sixth Amendment rights to confront the witnesses against them.

I think the panel's attempt to distinguish *Motes* by emphasizing the government's

lack of recklessness or purposefulness in this case is without foundation. *Motes* does not recite such a standard, and, indeed, repeatedly characterizes the actions of the government as negligent. 178 U.S. at 471, 474, 20 S.Ct. 993. The characterization in our opinion of the acts of the officer in *Motes* as a "reckless disregard of an obligation to produce" the witness is simply contrary to the characterization the Supreme Court put on the conduct, and I doubt our warrant to change it.

The court apparently treats the admissibility of Karen Jones' testimony as merely a matter of admitting hearsay evidence under the prior testimony exception to the hearsay rule, Fed.R.Evid. 804(b)(1),[3] and concludes that the unavailability test of Rule 804(a)[4] has been met. Of course, while there is some overlap in the interests sought to be protected by the hearsay rule and the Confrontation Clause, their ranges of exclusion are not co-extensive; the Confrontation Clause can be violated by the admission of testimony that comes within the purview of recognized hearsay exceptions. *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). Thus, while a literal

---

"A Yes, I saw some money.

"Q Did you receive any of the money at that time from the bank robbery?

"A Yes, I did. I got about—I am not really sure how much it was, maybe a hundred or two hundred from each person that had left the house and that was Moore, Mathis, James Stroy and Tillery.

"Q Now, what occurred after they left the house that day?

"A I cleaned up behind them and there was some I.B.M. cards that I found that had the name—

.    .    .    .    .

"Q What do you recall having been written on those cards?

"A Provident Savings Bank and the date, the 9th of January, 1975."

**2.** There were apparently two individuals by the name of Karen Jones confined in the custody of the United States in the District of Columbia House of Detention. The wrong Karen Jones, the one who had testified against Mathis at his first trial, was released from custody. She was under a sixteen year sentence for bank robbery of the Maryland National Bank.

**3.** Rule 804(b)(1) reads as follows:

"(b) *Hearsay Exceptions.*—The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) *Former testimony.*—Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."

**4.** Rule 804(a) reads in pertinent part:

"(a) *Definition of unavailability.*—'Unavailability as a witness' includes situations in which the declarant—

(5) is absent from the hearing and the proponent of his statement has been unable to procure his attendance   .   .   .   by process or other reasonable means.

A declarant is not unavailable as a witness if his   .   .   .   absence is due to the procurement or wrongdoing of the proponent of his statement for the purpose of preventing the witness from attending or testifying."

reading of Rule 804(a) may require the proponent of prior testimony to have procured or been wrongfully involved in the absence of the otherwise unavailable declarant for the purpose of preventing his testifying before the hearsay exception of Rule 804(b)(1) will not apply,[5] under the Confrontation Clause, as applied in *Motes*, mere negligence on the part of the prosecutor-proponent is sufficient, in a criminal case, to bar admissibility. *Green*, indeed, at 166, 90 S.Ct. at 1939, states the rule we should apply here:

"If . . . [the witness] had died or was otherwise unavailable, the Confrontation Clause would not have been violated by admitting his testimony given at the preliminary hearing—the right of cross-examination then afforded provides substantial compliance with the purposes behind the confrontation requirement, *as long as the declarant's inability to give live testimony is in no way the fault of the State.* Compare *Barber v. Page* [390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968)], with *Motes v. United States*, 178 U.S. 458, 20 S.Ct. 993, 44 L.Ed. 1150 (1900)." (italics added)

But here, the absence of the witness is admittedly not "in no way the fault of the" United States, so the evidence should be excluded. I submit that this view of the confrontation requirement is a sound one, with contemporary vitality. As long as our system of criminal justice is to adhere in any measure to the adversarial paradigm in which it was conceived, a defendant must not be held accountable for keeping track of the government's witnesses. The inclusion of a requirement in the Constitution that one be confronted with his accusers face to face finds its antecedents in efforts to cure serious abuses prevalent in the ancient criminal procedure of England, such as trial

by affidavit and deposition. See *Green*, supra at 177–78 & n.10, 90 S.Ct. 1930 (Harlan, J., concurring). Such a salutary measure should not be so lightly discarded, least of all when the unavailability of a key prosecution witness is due to the government's own negligence, and is not in any respect the fault of the defendant. In these circumstances, it strikes me as fundamentally unfair to have deprived Mathis of the opportunity to have the jury that convicted him observe and judge the credibility of Karen Jones in those subtle, intangible ways for which the reading of a bare transcript can never substitute.

---

**5.** This element, which obviously may amount to deliberateness, is not necessarily a limitation on the exception to unavailability expressed in the last sentence of Rule 804(a). The Advisory Committee's Note to Rule 804(a)(5) states that "[i]f the conditions otherwise constituting unavailability result from the procurement or wrongdoing of the proponent of the statement, the requirement is not satisfied." No mention is made by the Committee of purposefulness.

And Professors Redding and Salzberg, in their Editorial Comment on Rule 804(a)(5) in the *Federal Rules of Evidence Manual* state: "The typical common law provision that if the unavailability is produced by the person calling for the statements of the declarant, the various exceptions will not apply, is continued."

Thus, the statement of Karen Jones may well have been improperly admitted even as a matter of evidence law.