**UNITED STATES of America, Appellee,**

v.

**Jeffrey Keith DISBROW, Appellant.**

**No. 84–1949.**

United States Court of Appeals,
Eighth Circuit.

Submitted May 14, 1985.

Decided July 24, 1985.

William Kirschner, Fargo, N.D., for appellant.

Norman Anderson, Asst. U.S. Atty., Fargo, N.D., for appellee.

Before BRIGHT, Circuit Judge, HENLEY, Senior Circuit Judge, and ROSS, Circuit Judge.

ROSS, Circuit Judge.

This is an appeal by Jeffrey Keith Disbrow from a guilty verdict wherein Disbrow was found guilty of aiding and abetting in the distribution of cocaine; of conspiring to distribute cocaine; and of possession with the intent to distribute cocaine.[1] Jurisdiction is invoked pursuant to 28 U.S.C. § 1291. On appeal Disbrow alleges (1) that errors were made during voir dire; (2) that the court erred in restricting cross-examination; (3) that the court erred in admitting comments on Disbrow's post-silence arrest; (4) that the court erred in admitting evidence of a "smile" which allegedly constituted an admission; (5) that the court erred in failing to disclose the informant's identity; (6) that the court erred in admitting a tape recording with inaudible portions; (7) that the court erred in allowing the use of tape transcripts; and (8) the court erred in allowing the use of a tape recording after codefendant Ulland's arrest. We affirm.

## FACTS

Jeff Disbrow flew to Fargo, North Dakota, from Denver, Colorado, allegedly with five ounces of cocaine and allegedly for the purpose of delivering this cocaine to Kenny Ulland, a coconspirator. Ulland had obtained a formula which could be used to dilute the purity of cocaine and he had contacted Jeff Disbrow for help with the formula. Craig Christiansen, Jeff's cousin, met with Disbrow and Ulland in Moorhead where they allegedly discussed the formula, distribution of the five ounces of cocaine, and further drug deals. One ounce was sold to Scott Ingemansen. Ulland later delivered three ounces of Disbrow's cocaine to a confidential informant and Ulland was arrested. Ulland began cooperat-

---

1. See 18 U.S.C. § 2 (1982), 21 U.S.C. § 846, and 21 U.S.C. § 841(a)(1) (1982).

ing with the government and identified Jeff Disbrow as the source of the cocaine.

Ulland's cooperation with enforcement officials resulted in three taped phone calls to Christiansen's home, where Disbrow was staying, and two tape recorded meetings. The phone calls were for the purpose of allowing Ulland to pay Disbrow the money owed from the sale of the cocaine. At the payoff meeting, Ulland gave Disbrow $4,000.00 in marked bills in partial payment for the five ounces sold. Disbrow and Christiansen left the meeting and went to the parking lot where they were arrested after getting into Christiansen's car. The money was recovered along with an airline ticket from Denver to Fargo.

## A. Voir Dire

After completing the voir dire, the trial judge asked counsel if there were any additional questions to be asked. Counsel for Disbrow referred to a list of proposed questions he wanted the court to ask. The judge indicated that he had asked all of the questions from the list that he intended to ask. Shortly thereafter Disbrow's attorney expressed satisfaction with the overall questioning.

Disbrow argues that the voir dire was not adequate to meet constitutional standards. The judge refused to question the jurors about their familiarity with any of the *potential* witnesses. Additional requests for questioning were also denied. These questions, it is urged, would have shown if any prejudice existed.

 The issue on appeal is whether the voir dire was adequate to assure a fair trial. *Rosales-Lopez v. United States*, 451 U.S. 182, 188, 101 S.Ct. 1629, 1634, 68 L.Ed.2d 22 (1981); *United States v. Cassel*, 668 F.2d 969, 970 (8th Cir.), *cert. denied*, 457 U.S. 1132, 102 S.Ct. 2957, 73 L.Ed.2d 1348 (1982). Disbrow is particularly concerned that the judge did not ask the jurors if they were acquainted with any of the prospective witnesses.

In *United States v. Anderson*, 626 F.2d 1358, 1374 (8th Cir.1980), *cert. denied*, 450

U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981) this court stated:

The form and scope of voir dire examination rests primarily in the discretion of the district court, and will constitute error only if an abuse of discretion results in substantial prejudice to the defendant. *United States v. Lewis*, 547 F.2d 1030, 1036 (8th Cir.1976), *cert. denied*, 429 U.S. 1111, 97 S.Ct. 1149, 51 L.Ed.2d 566 (1977). Defendants argue that they were prejudiced by implanting the expectation of the appearance of those witnesses in the minds of the jurors, effectively compelling defendants to present a defense, rather than rest after the Government's case.

Although a better practice would be for the court to read the list of prospective witnesses without identifying whether they may appear on behalf of the prosecution or the defense, we do not perceive that defendants have suffered substantial prejudice in this case. The question of whether any of the jurors are acquainted with the prospective witnesses is clearly important to the question of the jurors' impartiality.

The jurors were told on four or five occasions of the need for an impartial jury. Also, the jurors were asked general questions about friends and relatives in law enforcement. Additionally, there was a general question asking the jurors if anything about the case or their past experience would make it difficult to hear this case.

 *Cassel, supra*, requires one to look at the overall examination of the jury *coupled with* the jury charge in determining the adequacy of the voir dire. *Id.* at 971. The instructions read to the jurors asked them to judge credibility carefully, keeping in mind that an informer is testifying for personal advantage. The examination and the instructions taken together assured Disbrow a fair trial by an impartial jury in this case. While the trial judge probably should have questioned the jury concerning any acquaintanceship with witnesses, we deem the omission as non-preju-

dicial in light of the overall examination of, and instructions to, the jury.

### B. Cross-examination

Disbrow argues that the court erred in restricting the scope of cross-examination of witness Kenny Ulland. Ulland was a "star" witness who had also entered into a plea agreement in a *separate* case.[2] The district court refused to admit these matters. Disbrow argues that this affected the witnesses' credibility.

■ It appears from the evidence that defense counsel was given wide latitude on cross-examination for impeachment purposes while questioning Ulland. Disbrow was permitted to cross-examine Ulland about his plea agreement in this case. Additionally, Disbrow was permitted to cross-examine regarding Ulland's prior fraud felonies and that Ulland had been in prison with, received drugs from, and had been indicted with Marcangelo. And although the defense was unable to get this unrelated plea agreement in on cross-examination, the government elicited the terms of the plea agreement on redirect. While it is true that a defendant should be permitted wide latitude in the scope of cross-examination of government witnesses about matters relevant to credibility or bias, *United States v. Mansaw*, 714 F.2d 785, 788 (8th Cir.), *cert. denied*, — U.S. —, 104 S.Ct. 434, 78 L.Ed.2d 366 (1983), the error, if any, was harmless.

### C. Post-Arrest Silence

Disbrow contends that the court erred in admitting comments on his post-arrest silence. On cross-examination of Disbrow, the government attorney asked: "Did you tell the people [when you were arrested] that, 'Hey, I'm innocent here'?" and Disbrow replied, "I tried." Defense counsel objected and the objection was sustained. The period in question deals with the time between Disbrow's arrest and when he

reached the jail which was approximately 15 minutes.

■ Disbrow argues that the *Doyle* rule is applicable here, *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), and requires a remand for a post-trial hearing. The *Doyle* rule applies when a person is silent *after* receiving his/her *Miranda* rights. On cross-examination a defendant who has received his rights cannot be impeached on this issue of silence. In *Fletcher v. Weir*, 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1980) the court held that the *Doyle* rule only applies where governmental action induced the defendant to remain silent. *See also Jenkins v. Anderson*, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980). There is no evidence to indicate that Disbrow received *Miranda* warnings prior to his arrival at the station. On the contrary, it appears that the *Miranda* warnings were given at the time Disbrow was being booked at the Cass County jail. If this is in fact the scenario that occurred, then the *Doyle* rule has not been violated.

■ Even if *Miranda* warnings had been given, Disbrow's arguments would still fail. The answer given by Disbrow was exculpatory and the evidence of guilt was overwhelming. The error, if any, was harmless beyond a reasonable doubt. *Jones v. Wyrick*, 542 F.2d 1013, 1014 (8th Cir.1976), *cert. denied*, 430 U.S. 956, 97 S.Ct. 1603, 51 L.Ed.2d 807 (1977).

### D. The Smile

■ Scott Ingemansen, a codefendant, while in jail with Disbrow, testified that Disbrow smiled when asked if he were the supplier of the cocaine. Defense counsel objected. The prosecutor argued in closing argument that this was an adoptive admission of guilt under FED.R.EVID. 801(d)(2)(B). *United States v. Lilley*, 581 F.2d 182, 187 (8th Cir.1978). *Lilley* requires that the accusatory statement must be made in the defendant's presence, that

---

**2.** The case in question is case number C3–84–14 and involved Ulland and defendant Marcangelo in a claim of conspiracy to distribute drugs. Disbrow makes no claim that he knows Marcangelo or that the two cases are related.

the defendant must understand it, and that the defendant must have an opportunity to deny it. The government argues that it does not matter whether the "statement" is a word or a smile, it is still an adoptive admission. *See Folston v. Allsbrook*, 691 F.2d 184, 187 (4th Cir.), *cert. denied*, 461 U.S. 939, 103 S.Ct. 2111, 77 L.Ed.2d 314 (1983).

The objection may have been well-taken to this smile evidence, but the admission of this item of evidence in light of the whole record cannot be deemed sufficiently prejudicial to justify a new trial.

### E. Confidential Informant

■ Disbrow argues that the court erred in failing to disclose the name of the informant. The government has a qualified privilege to withhold the name of an informant, but this privilege must be balanced against Disbrow's right to prepare his defense. *Roviaro v. United States*, 353 U.S. 53, 59–62, 77 S.Ct. 623, 627–629, 1 L.Ed.2d 639 (1957). Disclosure will not be ordered unless it is vital to a fair trial. *United States v. Weir*, 575 F.2d 668, 673 (8th Cir. 1978).

■ Disbrow makes no showing of how the testimony of the informant would have helped his defense. Here, the informant was merely a "tipster" and was not present when the cocaine was delivered from Disbrow to Ulland. The district court reviewed the informant's file *in camera* and denied Disbrow's motion for disclosure. Disbrow was unable to show how the informant's testimony would be helpful to his defense.

We find that the district court followed the guidelines set forth in *United States v. Weir, supra,* and found the information was neither vital to a fair trial nor helpful to Disbrow's defense. We have examined the *in camera* file and we find no abuse of discretion in this regard.

### F. Admission of Tapes

Disbrow makes three arguments in this regard. First, Disbrow argues that tape recordings should not have been admitted, because portions were inaudible. *United States v. Bell*, 651 F.2d 1255, 1259 (8th Cir.1981) (test is whether inaudible portions are so substantial to render tape as a whole unworthy). Second, he alleges that the court erred in admitting transcripts of tapes when an FBI agent testified that he could not verify the tapes as accurate. *United States v. McMillan*, 508 F.2d 101, 105 (8th Cir.1974), *cert. denied*, 421 U.S. 916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1975) (foundational requirements). Third, Disbrow contends that recorded statements between Disbrow and Ulland were inadmissible because Ulland was already under arrest. Thus, argues Disbrow, Ulland was no longer a coconspirator because the conspiracy had ended and everything said, therefore, was hearsay.

■ With regard to the admissibility of inaudible tapes, *Bell* states that admission is within the sound discretion of the trial judge. *Bell,* 651 F.2d at 1259. [The trial judge did not listen to the Disbrow tapes prior to trial]. Although the better practice would have been to listen to the tapes prior to trial, the error, if any, is harmless. Agent Bounds testified that the tape recordings accurately recorded the conversations during the meeting at the Highway Host. The taped conversations were probative of material issues and were audible enough to give the jury the "gist" of what happened. Ulland also testified concerning the events leading up to and at the meeting. Additionally, Disbrow did not object to these tapes until two days into the trial even though he had them for at least three weeks.

■ With regard to the foundational argument, Agent Bounds testified that he recorded the conversations on the tapes, listened to the tapes, compared the transcript to the corresponding tape, and he testified that the transcripts accurately reflected the audible portion of the tapes. Additionally, the district court instructed the jury:

I'm going to allow the jury to use the transcript and again ask the jury to keep in mind when you are listening to the tapes that if there is something that ap-

pears on the tapes that you cannot, if there is something that appears on the transcript that you cannot identify on the tapes, then that must be disregarded because the tape is the evidence in the case, and if you cannot find or hear on the tape that which is shown on the transcript, then the transcript must be considered to be in error and the tape must be considered to be accurate. So you should resolve any discrepancy between the two by disregarding that which appears on the transcript. You may proceed.

This instruction was quite proper and Disbrow has failed to point to any inaccuracies in the transcript. *See United States v. Bell, supra,* 651 F.2d at 1259 n. 3.

With regard to admission of tapes occurring after Ulland's arrest, the arrest of one coconspirator does not necessarily terminate the conspiracy. *United States v. Smith,* 578 F.2d 1227, 1233 n. 12 (8th Cir.1978); *United States v. Williams,* 548 F.2d 228, 231–32 (8th Cir.1977). The test is whether the remaining conspirators were able to continue with the conspiracy. *United States v. Burnett,* 582 F.2d 436, 438 (8th Cir.1976). *United States v. Smith, supra,* 578 F.2d at 1237 (concurring opinion) permits conversations such as the ones that took place in this case to be admitted. In any event, even if the conspiracy had ended, the statements were admissible under FED.R.EVID. 801(d)(2)(A) as an admission. *United States v. Smith, supra,* 578 F.2d at 1238.

## CONCLUSION

For the reasons set forth here we find all of the claims raised by Disbrow to be without merit.

Affirmed.