UNITED STATES of America, Appellee,

v.

Terry Lynn BOURBON, Appellant.

No. 86–2116.

United States Court of Appeals,
Eighth Circuit.

Submitted April 14, 1987.

Decided May 28, 1987.

---

Before McMILLIAN, FAGG and MAGILL, Circuit Judges.

MAGILL, Circuit Judge.

Terry Lynn Bourbon appeals from a final judgment entered in the district court[1] upon a jury verdict finding him guilty of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). The court sentenced appellant to fifteen years imprisonment, to be followed by a special parole term of six years. For reversal, appellant argues that the district court erred in (1) refusing to suppress evidence seized during execution of the search warrant, (2) refusing to compel the government to disclose the identity of the confidential informant, (3) refusing to allow certain questioning of a government agent, and (4) admitting, over objection, a grey notebook into evidence. For the reasons discussed below, we affirm.

## I. BACKGROUND.

On March 6, 1986, a federal grand jury indicted appellant with one count of knowing and intentional possession with intent to distribute a quantity of cocaine. The indictment was based upon evidence seized during the execution of a search warrant issued by a federal magistrate.[2] The magistrate issued the warrant based on the application and affidavit of Donald Walton, a special agent with the Drug Enforcement Agency, who relied on information supplied by an informant.[3] The warrant authorized

William P. Grant, St. Louis, Mo., for appellant.

Richard Poehling, Asst. U.S. Atty., St. Louis, Mo., for appellee.

1. The Honorable George F. Gunn, United States District Judge for the Eastern District of Missouri.

2. The Honorable Robert D. Kingsland, United States Magistrate.

3. The affidavit stated:

My name is Donald Walton. I am a Special Agent with the Drug Enforcement Administration and have been so for 3 years.

For the past two months myself and other agents have been working with a confidential informant (hereinafter "CI") who has provided information and cooperation which led to the arrest of two individuals on charges of conspiracy to manufacture methamphetamine on February 22, 1986. The CI also advised me that Terry Bourbon was to have purchased some of the methamphetamine from the two arrested individuals.

On February 21, 1986, the CI was inside the residence of Terry Bourbon at 3816 McDonald, St. Louis, Missouri, and observed approximately two (2) ounces of cocaine in the residence. He also saw a revolver in the carriage house adjacent to the residence.

On February 25, 1986, the CI was again inside the residence at 3816 McDonald. He told Special Agent Ben Scott, who told me that he, the CI, overheard Terry Bourbon on the telephone saying "the cold weather brought in some snow," and that "if you want some of that you can come over and get some." Bourbon told the CI that he had "some stuff in the house he had to move out" and that as soon as he got "rid of it" he was going to "clean up" his house. Both the CI and myself know "snow" to be a street or code name for cocaine. Based on my experience as a narcotics investigator, I believe that

the search of appellant's residence, and a two-story carriagehouse in the back of the residence.

On February 25, 1986, after obtaining the warrant, Walton went to the residence, and DEA Agent Braun and a police officer went to the carriagehouse. Braun identified himself and announced that he had a search warrant, but received no response. After hearing movement inside, he repeated his announcement but again received no response. After forcibly opening the door, the appellant and his 18–year-old stepson were found on the first floor. Appellant was detained and advised of his constitutional rights. A few minutes later, Walton came to the carriagehouse, and again advised appellant of his rights and told him of the search warrant.

Upon commencement of the search, DEA Agent Scott was designated as the seizing officer. In addition to seizing approximately eighty-five grams of cocaine with purities of 95%, 43%, and 24%, the agents also seized a grey notebook and numerous pieces of narcotic paraphernalia—scales, dilutants, a blender, and packaging materials—from a desk in the loft area of the carriagehouse.

Appellant filed several pretrial motions, including one to suppress evidence and one to reveal the identity of the government's informant. After hearings, a federal magistrate [4] recommended denial of both motions, and the district court ruled accordingly. The evidence seized pursuant to the search warrant was introduced at trial. Following a two-day trial, the jury found appellant guilty of possession with intent to distribute cocaine. This appeal followed.

## II. DISCUSSION.

### A. Motion to Supress.

■ Appellant argues that the district court erred in applying the "totality-of-the-circumstances" test established in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 2230 (1983), because the affidavit supporting the search warrant did not provide the reviewing magistrate with a substantial basis for determining the existence of probable cause of criminal activities within either structure listed on the search warrant. Specifically, appellant disputes the reliability of the unnamed informant, and asserts that even if there was probable cause to support the search of the residence, the only statement by the informant regarding the carriagehouse was that appellant kept weapons there and used it "to sell dope out of." Appellant contends that these statements were insufficient to support the search of the carriagehouse and that, at the least, the evidence seized from that search should not have been admitted.

Our duty, as defined in *Gates*, is "to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Id.* at 238–39, 103 S.Ct. at 2332 (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)); *accord United States v. Mims*, 812 F.2d 1068, 1072 (8th Cir.1987). Under the totality-of-the-circumstances test, the issuing magistrate's function

is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair

Bourbon, when referring to "stuff" and "it" was talking about cocaine.

I also know that Terry Bourbon is currently on parole out of the Eastern District of Missouri, for two counts of methamphetamine distribution in 1980.

The CI also advised that Bourbon uses the carriage house to "sell dope out of" and keeps weapons inside it.

Further, I know that distributors of controlled substances keep records of their transactions, U.S. currency, materials used for the cutting and packaging of controlled substances in their residence. I also know that

such distributors also keep firearms on their premises.

Based on the above, I believe there is probable cause to believe that cocaine, U.S. currency, financial records, firearms [sic], materials used for the cutting and packaging of cocaine are on the premises known as 3816 McDonald, St. Louis, Missouri, and adjacent carriage house.

4. The Honorable Carol E. Jackson, United States Magistrate.

probability that contraband or evidence of a crime will be found in a particular place.

*Gates,* 462 U.S. at 238, 103 S.Ct. at 2332; *accord Mims* at 1072. The magistrate's determination must be given great deference. *Mims,* at 1072 (citing *United States v. Arenal,* 768 F.2d 263, 266 (8th Cir.1985)).

We believe that the issuing magistrate had a substantial basis for concluding that probable cause existed for the issuance of the search warrant as to both buildings. First, according to the affidavit, the confidential informant previously provided Agent Walton with information which led to the arrest of two individuals on charges of a drug conspiracy, and further advised Walton that appellant was to have purchased some of the drugs from those individuals. This information supported the informant's credibility and reliability. Second, the affidavit stated that the informant told Walton that he was inside appellant's residence four days before and the day of the search warrant's issuance; that he observed cocaine in the residence and a revolver in the carriagehouse; that he overheard appellant on the telephone having a conversation about "snow"; and that appellant used the carriagehouse to "sell dope out of" and to store weapons. Thus, the informant had personal knowledge of the appellant's activities as to both buildings. Finally, in the affidavit, Walton testified as to his prior experience with drug offenders and his knowledge of appellant's prior involvement with drug distribution.

Under a totality-of-the-circumstances analysis, we believe that the affidavit amply supported the magistrate's conclusion that there was a fair probability that cocaine and other evidence of criminal activity would be found in either or both of the buildings. Accordingly, we conclude that the magistrate had a substantial basis for determining that probable cause existed for issuance of the search warrant.

**B. Disclosure of the Informant's Identity.**

█ Although conceding that the government generally has the privilege to withhold from the defendant the identity of its informants, appellant argues that *Rovario v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), which held that disclosure may be required where a defendant shows that it would be relevant and helpful to the defense or essential to a fair trial, requires disclosure under the facts of this case. Appellant argues that the informant's past criminal record, if any, and the informant's incentive for supplying information were essential because the informant provided the probable cause for issuance of the search warrant.

We addressed a similar argument in *United States v. Skramstad,* 649 F.2d 1259, 1264–65 (8th Cir.1981), and our response applies equally to the instant case: "We disagree. As discussed above, the affidavit adequately established the reliability of the informant by referring to the informant's history of investigative cooperation which led to the arrests of several narcotics offenders." *Id.* at 1265. Moreover, the informant's reliability here was also established by his personal knowledge of the appellant's activities.

In addition, as the Supreme Court has stated:

What *Roviaro* thus makes clear is that this Court was not willing to impose any absolute rule requiring disclosure of an informer's identity even in formulating evidentiary rules for criminal trials. *Much less has the Court ever approached the formulation of a federal evidentiary rule of compulsory disclosure where the issue is the preliminary one of probable cause, and guilt or innocence is not at stake.*

*McCray v. Illinois,* 386 U.S. 300, 311, 87 S.Ct. 1056, 1062, 18 L.Ed.2d 62 (1967) (emphasis added). Obviously, the court's admonition is directly applicable to appellant's argument in this case.

Alternatively, appellant argues that the district court should have required disclosure of the informant's identity as a material defense witness. *See Roviaro,* 353 U.S. at 60–61, 77 S.Ct. at 627–28; *United States v. Barnes,* 486 F.2d 776, 778–79 (8th Cir.1973). Appellant asserts that because

the informant was at his residence only four days before and also the day of the search warrant's issuance, and because the informant alleged personal observation of cocaine and hearing of statements made by appellant regarding possession of cocaine, the informant is a material witness. We disagree.

■■■■ Disclosure of a confidential informant will not be ordered unless it is vital to a fair trial. *United States v. Disbrow*, 768 F.2d 976, 981 (8th Cir.) (citation omitted), *cert denied,* —— U.S. ——, 106 S.Ct. 577, 88 L.Ed.2d 560 (1985). In this case, disclosure was not vital to a fair trial, because the informant was a "tipster," i.e., a person who merely conveys information but does not witness or participate in the offense. *Skramstad*, 649 F.2d at 1265; *United States v. House*, 604 F.2d 1135, 1140 (8th Cir.1979), *cert. denied*, 445 U.S. 931, 100 S.Ct. 1320, 63 L.Ed.2d 764 (1980). Although the informant admittedly was in appellant's house and personally observed the cocaine, he was not present during execution of the search warrant or seizure of the evidence. Further, appellant was not charged with selling cocaine, but with possession with intent to distribute cocaine. *See Skramstad*, 649 F.2d at 1263; *House*, 604 F.2d at 1137–38. In similar cases disclosure has not been required, *see Disbrow*, 768 F.2d at 981; *Skramstad*, 649 F.2d at 1265; *House*, 604 F.2d at 1140, and thus, we believe the district court did not err in refusing to compel disclosure of the informant's identity as a material defense witness.

### C. Cross-Examination of Agent Scott.

■■■ The district court sustained the government's objection to appellant's attempt to ask Agent Scott whether he knew an individual named Mark Gilstrap. Appellant maintains that this was prejudicial error because an affirmative answer would have been additional evidence from which the jury could have inferred the cocaine seized from appellant's carriagehouse did not belong to appellant.

Under Fed.R.Evid. 611(b), the district court has broad discretion in limiting the scope of cross-examination, and will not be reversed "unless there has been a clear abuse of discretion and a showing of prejudice to defendant." *United States v. Lee*, 743 F.2d 1240, 1249 (8th Cir.1984) (citing *United States v. Cole*, 449 F.2d 194, 199 (8th Cir.1971), *cert. denied*, 405 U.S. 975, 92 S.Ct. 1200, 31 L.Ed.2d 250 (1972)). We do not see how Scott knowing Gilstrap would have helped appellant's case. In fact, we agree with the district court that it appears appellant was merely attempting to ascertain, or narrow down the possibilities of the informant's identity. Accordingly, the court did not abuse its discretion in disallowing the question, but reaffirmed the privilege protecting the informant's identity.

### D. Admission of the Grey Notebook.

Appellant argues that the court erred in allowing the government to admit into evidence, over his objection, the grey notebook seized from the search of appellant's carriagehouse, and that this error was prejudicial and deprived appellant of a fair trial. Appellant contends that the government failed to lay a proper foundation for authentication of the notebook under Fed. R.Evid. 901, and that this failure made the notebook irrelevant. Specifically, appellant asserts that the government introduced the notebook as evidence of appellant's intent to distribute the seized cocaine, and because the government presented no evidence on the author's identity or when the notations were made, the notebook was without probative value.

■■■ Even if appellant's assertions are correct and if the court erred in admitting the notebook, both over which we express considerable doubt,[5] any error was harm-

---

5. There is some indication in the record that the government attempted to use the notebook as evidence of appellant's intent to distribute the seized cocaine. *See* Tr. T. at 60, 71–72, 105–07. The government, however, contends that it sought to introduce the notebook to show appellant's control over the carriagehouse. The record also provides considerable support for this position. *See id.* at 71–72. If this was the case, we have no doubt that the notebook was

less. Our review of the entire trial transcript convinces us that there was other circumstantial evidence to permit the jury to find beyond a reasonable doubt that appellant intended to distribute the seized cocaine. First, in testifying that appellant was running a distribution operation, Agent Lazano relied not only on the notebook notations, but also on the quantity and purity of the seized cocaine, and on the scales. Likewise, Agent Walton testified that based on the quantity and purity of the cocaine, the packaging material, and the notebook, the seized cocaine was intended for distribution purposes. Thus, there was ample evidence other than the notebook—testimony relating to the quantity and purity of the seized cocaine and the seized narcotics paraphernalia—that would permit a jury to reasonably conclude that the seized cocaine was intended for distribution purposes. *See United States v. Baswell*, 792 F.2d 755, 760 (8th Cir.1986) (possession of 83.1 grams of 64% pure cocaine sufficient to show intent to distribute when viewed with other evidence of intent); *United States v. Koessel*, 706 F.2d 271 (8th Cir.1983) (conviction of intent to distribute based on possession of 26.09 grams of cocaine); *see also Barnes v. United States*, 777 F.2d 430, 431 (8th Cir.1985) (intent to distribute may be inferred solely from large quantity and street value of seized cocaine).

Finally, appellant for the first time on appeal objects to introduction of the notebook as hearsay. Although the issue is not properly before us because of appellant's failure to make a timely objection, *see* Fed.R.Evid. 103(a)(1); *United States v. Garcia*, 785 F.2d 214, 220 (8th Cir.), *cert. denied*,

— U.S. ——, 106 S.Ct. 1797, 90 L.Ed.2d 342 (1986), we still may review appellant's claim under the "plain error" standard. *Garcia*, 785 F.2d at 220; Fed.R.Crim.P. 52(b). For the same reasons outlined above, however, even if the district court erred in admitting the notebook because it was inadmissible hearsay, an issue upon which we express no opinion, the error did not affect appellant's substantial rights or result in a miscarriage of justice.

Based on the foregoing analysis, the district court's judgment is affirmed.

---

properly authenticated and was admissible as relevant to appellant's control over the building. If, however, as appellant asserts, the former situation is the case, then the notebook may not have been properly authenticated because the record shows that the government presented no evidence of *when* the notations were made, and thus the notebook may not have had any probative value with respect to the issue of appellant's intent. *See* J. Weinstein and M. Berger, Weinstein's Evidence ¶ 901(a)[02], at 901–18 (1978) (authentication requirements are specialized aspects of relevancy which must be satisfied prior to admitting evidence); *see also United States v.*

*Brown*, 584 F.2d 252, 265 (8th Cir.1978) (notations not probative where, in addition to other defects, no dates appeared on papers), *cert. denied*, 440 U.S. 910, 99 S.Ct. 1220, 59 L.Ed.2d 458 (1979); *cf. United States v. Blackwell*, 694 F.2d 1325, 1331 (D.C.Cir.1982) (foundational requirements of authentication require proof of when photograph was taken in order to establish relevance of evidence to charged crime); *United States v. Stearns*, 550 F.2d 1167, 1171 (9th Cir. 1977) (same). Nevertheless, we also note that there is no record of the court giving the jury a limiting instruction on the notebook, and it appears that appellant never requested one.