**UNITED STATES of America**

v.

**Ahmad MICKENS.**

**Crim. A. No. 2:93–00107–01.**

United States District Court,
S.D. West Virginia,
Charleston Division.

Nov. 26, 1993.

J. Kirk Brandfass, Asst. U.S. Atty., Charleston, WV, for plaintiff.

Nathan Hicks, Charleston, WV, for defendant.

### MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are Defendant's two motions for a new trial. On August 25, 1993, after a two-day trial, a jury found Defendant guilty of possession with intent to distribute approximately three ounces of cocaine base. Defendant asserts he is entitled to a new trial because the Court allegedly erred in admitting as evidence a tape recorded conversation between Defendant and two confidential informants who were not available to testify at trial, and because the government allegedly improperly interfered with Defendant's attempt to compel the attendance at trial of a defense witness. The Court has carefully considered Defendant's claims, and for reasons which follow, finds each is without merit.

### I.

Defendant Mickens and his co-Defendant James G. Johnson were charged in a two-count indictment filed May 12, 1993 with conspiracy to possess with intent to distribute cocaine base, aiding and abetting the possession with intent to distribute cocaine base, and possession with intent to distribute cocaine base. At the conclusion of the government's case on August 25, 1993, the Court granted Defendant Johnson's motion for judgment of acquittal, finding the evidence presented by the government was legally insufficient to sustain a conviction on the charges against Defendant Johnson, and that no reasonable jury could have found the Defendant Johnson guilty beyond a reasonable doubt of the charges against him. The Court dismissed Count One of the indictment, and ordered stricken from Count Two the charge of aiding and abetting possession with the intent to distribute cocaine base. The redacted indictment left pending only the charge of possession with intent to distribute cocaine base against Defendant Mickens.

The government's case consisted chiefly of testimony from police officers who investigated Defendant Mickens and participated in his arrest. The government's evidence included a tape recording alleged to be a conversation between the Defendant and confidential informants during which Defendant purchased controlled substances from the informants. The confidential informants heard on the tape recording were shot and killed before trial. Defendant called no witnesses in his own behalf.

### II.

■ Defendant claims the Court's admission of the tape recorded conversation between Defendant and the confidential informants was erroneous because the tape was partially inaudible and therefore untrustworthy, and because the deceased confidential informants heard on the tape were unavailable to testify at trial.

■ A trial judge has wide latitude in determining the admissibility of tape recorded evidence. *United States v. Huff,* 959 F.2d 731, 737 (8th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 162, 121 L.Ed.2d 110 (1992); *United States v. Disbrow,* 768 F.2d 976, 981 (8th Cir.), *cert. denied,* 474 U.S. 1023, 106 S.Ct. 577, 88 L.Ed.2d 560 (1985); *United States v. Scaife,* 749 F.2d 338, 345 (6th Cir. 1984); *United States v. Watson,* 594 F.2d 1330, 1335 (10th Cir.), *cert. denied,* 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979). Although portions of the tape recording in this case were of poor quality, the Court evaluated the audible portions of the tape in light of other evidence adduced at trial and determined the inaudible portions of the tape did not render it untrustworthy.

In *United States v. Hall,* 342 F.2d 849, 853 (4th Cir.), *cert. denied,* 382 U.S. 812, 86 S.Ct. 28, 15 L.Ed.2d 60 (1965), the Fourth Circuit upheld the admissibility of a tape recorded conversation between the defendant and an undercover agent where as much as 25 percent of the taped conversation was inaudible, but the portion of the tape relating to the offer and acceptance of a bribe was clear and audible. The *Hall* court cited with approval the Fifth Circuit's holding in *Addison v. U.S.,*

317 F.2d 808, 815 (5th Cir.1963), *cert. denied,* 376 U.S. 905, 84 S.Ct. 658, 11 L.Ed.2d 605 (1964). There, the court upheld the admission of a tape recording of a conversation even though one-half of the tape was defective and the speech or conversation on the defective portion of the tape was not available for trial. *Id.*

Quoting *Monroe v. U.S.,* 234 F.2d 49, 55 (D.C.Cir.1955), *cert. denied,* 352 U.S. 872, 77 S.Ct. 94, 1 L.Ed.2d 76 (1956), the *Addison* court held "Unless the unintelligible portions are so substantial as to render the recording as a whole untrustworthy the recording is admissible, and the decision should be left to the sound discretion of the trial judge." *Addison,* 317 F.2d at 815.[1]

Other circuits which have addressed the issue have held likewise. In *United States v. Stone,* 960 F.2d 426, 436 (5th Cir.1992), the Fifth Circuit held unintelligible portions of tape recordings did not render them inadmissible in a drug prosecution where the allegedly unintelligible portions were not so substantial as to render the recording as a whole untrustworthy and the court appropriately instructed the jury to disregard the unintelligible portions. *See also, United States v. Ruppel,* 666 F.2d 261, 272 (5th Cir.), *cert. denied,* 458 U.S. 1107, 102 S.Ct. 3487, 73 L.Ed.2d 1369 (1982). The Seventh Circuit recently held the inaudibility of a portion of a tape recording which is generally audible is relevant only to its weight, a jury question, and not to its admissibility. *United States v. Robinson,* 956 F.2d 1388, 1395 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 654, 121 L.Ed.2d 581 (1992). The Second Circuit has held there exists a "clear preference for the admission of recordings notwithstanding some ambiguity or inaudibility, as long as the recordings are probative." *United States v. Arango–Correa,* 851 F.2d 54, 58 (2d Cir. 1988).

Here, the Court concludes there was ample basis for its finding the tape was a sufficiently accurate reproduction of the conversation it purported to reproduce. The tape was audible enough to give the jury the "gist" of what happened during the conversation. *Disbrow,* 768 F.2d at 981. Defendant had the opportunity to, and did address the quality of the tape during argument to the jury. *United States v. Martinez,* 951 F.2d 887, 888 (8th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1695, 118 L.Ed.2d 407 (1992). Defendant's argument he is entitled to a new trial on this basis is meritless.

■■■ Defendant also claims the Court should have declined to admit as evidence the tape recording because the confidential informants heard on the tape were killed prior to trial, and were therefore unavailable to testify. Defendant's own statements on the tape could, of course, be used against him because they were plainly not hearsay, but were instead party admissions. *Rule* 801(d)(2)(A), Federal Rules of Evidence; *United States v. McDowell,* 918 F.2d 1004, 1007 (1st Cir.1990). Having made admissions, Defendant may not keep from the jury other segments of the taped discussion reasonably required to place those admissions into context. *McDowell,* 918 F.2d at 1007.

The informants' statements on the tape were offered not for their truth, but rather to provide a context for Defendant's own statements. The recording was admissible as "a reciprocal and integrated utterance" between the parties to the conversation. *Id.; United States v. Gutierrez–Chavez,* 842 F.2d 77, 81 (5th Cir.1988); *United States v. Murray,* 618 F.2d 892, 900 (2d Cir.1980); *United States v. Lemonakis,* 485 F.2d 941, 948–49 (D.C.Cir. 1973), *cert. denied,* 415 U.S. 989, 94 S.Ct. 1586, 39 L.Ed.2d 885 (1974). In *Lemonakis,* a confidential informant similarly died before trial, and the tape recorded conversations between the informant and the defendants were offered, as here, to put into context the statements of the defendants.

The portions of the conversation attributed to the confidential informants were necessary

---

1. On this point, *see also, United States v. Arango–Correa,* 851 F.2d 54, 58 (2d Cir.1988); *United States v. West,* 948 F.2d 1042, 1044 (6th Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1209, 117 L.Ed.2d 447 (1992); *United States v. Camargo,* 908 F.2d 179, 183 (7th Cir.1990); *United* States v. Huff, 959 F.2d 731, 737 (8th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 162, 121 L.Ed.2d 110 (1992); *United States v. Davis,* 780 F.2d 838, 846 (10th Cir.1985); and *United States v. Harrell,* 788 F.2d 1524, 1527 (11th Cir.1986).

to put Defendant's statements into perspective and make them recognizable as admissions. *McDowell,* 918 F.2d at 1007; *United States v. Davis,* 890 F.2d 1373, 1380 (7th Cir.1989), *cert. denied,* 493 U.S. 1092, 110 S.Ct. 1165, 107 L.Ed.2d 1068 (1990); *see also, United States v. Leake,* 642 F.2d 715, 720 n. 6 (4th Cir.1981) (statements "were admissible ... as necessary to explain the context in which [the defendant] made the statements revealing his state of mind.")

The *informants'* taped statements admitted in this case are not analogous to those "ex parte affidavits or depositions" against which the confrontation clause was designed to guard. *See California v. Green,* 399 U.S. 149, 156, 90 S.Ct. 1930, 1934, 26 L.Ed.2d 489 (1970); *Murray,* 618 F.2d at 900. The statements at issue were admitted for the limited purpose of placing Defendant's remarks in their proper context. The statements were not offered for their own truth, but as part of a "reciprocal and integrated" conversation with the Defendant. *Murray,* 618 F.2d at 900. The admission of the tape under these circumstances did not violate the Defendant's Sixth Amendment right "to be confronted with the witnesses against him." *Id.* The Defendant's right to cross-examine the deceased informants under oath does not operate as a bar to admissibility. *Lemonakis,* 485 F.2d at 949; *Davis,* 890 F.2d at 1380.

### III.

■ Defendant's final contention is that the government unduly interfered with a subpoenaed witness, Corey Howard, and prevented Howard from appearing and testifying at trial. Both the government and the Defendant issued subpoenas to secure Howard's attendance at the trial. When, on the final day of trial, Defendant informed the Court Howard had been subpoenaed and failed to appear, the Court directed the United States Marshal Service to investigate.

The Marshal Service contacted Howard at his Georgia residence. Howard said although he had been served with the subpoenas, the Assistant United States Attorney had spoken by telephone with Howard's mother and informed her the trial had been continued. Howard stated he could be available to testify on short notice. The Assistant United States Attorney represented to the Court that while he had told Howard's mother the trial had been continued once previously, he informed her Howard would have to appear in court on the date stated on the subpoenas.

Defendant did not inform the Court Howard had failed to honor the subpoenas until the final day of trial. Although Howard stated he could travel to West Virginia to testify "on short notice," Defendant did not request Howard be compelled to appear or that the trial be continued so that Howard could testify. Nor did Defendant proffer to the Court the substance of Howard's proposed testimony or suggest Howard's testimony would exculpate Defendant.

■ Defendant correctly notes he was entitled at trial to present witnesses on his own behalf without interference from the government. *Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967). He was likewise entitled to compulsory process for obtaining witnesses in his favor. *Id.,* at 18, 87 S.Ct. at 1922. Indeed, the right to present a defense is one of the "minimum essentials of a fair trial." *Chambers v. Mississippi,* 410 U.S. 284, 294, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973) (citing *In re Oliver,* 333 U.S. 257, 273, 68 S.Ct. 499, 507, 92 L.Ed. 682 (1948)).

However, Defendant has failed to demonstrate the government deprived him of his right to call Howard as a witness. Once apprised of Howard's explanation for his absence, Defendant evidenced no desire to have Howard produced, never called him as a witness, and never moved for a continuance of the trial. In light of these facts, the purposeful governmental activity operating to deny the right of compulsory process which the Supreme Court invalidated in *Washington v. Texas,* 388 U.S. at 19, 87 S.Ct. at 1923, simply is not present here. *See also, Green v. Estelle,* 488 F.2d 918, 920 (5th Cir. 1973); *White v. State of South Carolina,* 708 F.Supp. 1465, 1472–73 (D.S.C.1988), *aff'd,* 885 F.2d 867 (4th Cir.1989).

A new trial is warranted under *Rule* 33, Fed.R.Crim.P., "if required in the interest of

justice." Defendant suggests the government interfered with his attempt to compel Howard's attendance as a witness only now, after the jury has returned a verdict adverse to him. Defendant took advantage of none of the options available to him to compel Howard's attendance after he failed to honor the subpoenas. The Court finds the interest of justice does not require Defendant receive a new trial on this basis.

## IV.

For these reasons, the Court **DENIES** Defendants motions for a new trial. The Clerk is directed to send a copy of this Order to counsel.