**UNITED STATES of America**

v.

**William Edward REBROOK III, Defendant.**

**Crim. No. 2:9300151–001.**

United States District Court,
S.D. West Virginia,
Charleston Division.

Jan. 19, 1994.

Larry R. Ellis, Asst. U.S. Atty., Charleston, WV, for plaintiff.

A.T. Ciccarello, Charleston, WV, for defendant.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending is Defendant's motion for a new trial, filed in accordance with *Rule* 33, Fed. R.Crim.P.[1] The government has filed a response opposing the motion. On November 5, 1993, after a four-day trial, a jury convicted Defendant of both counts of a two-count indictment charging him with wire fraud and insider trading. The Court will sentence Defendant at 11:30 a.m. on Monday, February 7, 1994.

### I.

Defendant argues he is entitled to a new trial[2] because the Court erred in denying his

---

1. The facts of this case were fully explicated in a previous Memorandum Opinion and Order.

*United States v. Rebrook,* 837 F.Supp. 162 (S.D.W.Va.1993).

2. *Rule* 33 delineates the standard by which a

motions to dismiss the indictment filed prior to trial, and his oral motions for judgment of acquittal at trial. The Court thoroughly explained its rationale for denying the motions to dismiss the indictment in the Memorandum Opinion and Order filed October 26, 1993. *See supra* note 1. Defendant offers no new or different legal or factual support for the motions. The Court denied the motions for judgment of acquittal after argument at trial; Defendant has not supplemented or otherwise modified the motions. The Court has addressed fully all these motions and concluded they are meritless. Defendant has proffered no reason to reconsider them here.

## II.

Defendant contends the Court erred when it denied Defendant's motion for individual voir dire. The Court heard argument on this motion October 28, 1993, and ruled it would entertain suggested voir dire questions submitted by counsel, but would conduct the voir dire examination itself.

■ It is well settled a trial judge may conduct voir dire without allowing counsel to pose questions directly to potential jurors. *Rule* 24(a), Fed.R.Crim.P.; *United States v. Bakker*, 925 F.2d 728, 734 (4th Cir.1991). A trial court possesses broad discretion in determining the manner in which voir dire is to be conducted. *United States v. Robinson*, 804 F.2d 280, 283 (4th Cir.1986).

■ During voir dire, the Court posed questions submitted by the parties in addition to its own. When it concluded, the Court asked the parties if they wished to suggest further questions for the prospective panel. In accordance with *Rule* 24(a), the Court then asked the additional questions the parties suggested. The Court questioned individually potential jurors whose responses proved less than satisfactory, providing them the opportunity to speak to the Court and counsel privately. This voir dire procedure was specifically approved by the Fourth Circuit in *Bakker*, 925 F.2d at 734.

■ The Court notes as well the parties challenged no jurors for cause and raised no objections to the panel. A specific objection or request during the voir dire process is required to preserve the objection. *United States v. LaRouche*, 896 F.2d 815, 829 (4th Cir.1990), *cert. denied*, 496 U.S. 927, 110 S.Ct. 2621, 110 L.Ed.2d 642 (1990); *King v. Jones*, 824 F.2d 324, 326 (4th Cir.1987).

## III.

Defendant incorrectly contends that to prove the charge of insider trading, the government had to establish a relationship between Defendant and Video Lottery Consultants ("VLC"), the company in whose stock he traded. The government's charge of insider trading was based on the "misappropriation theory," summarized by the Second Circuit in *United States v. Chestman*, 947 F.2d 551, 566 (2d Cir.1991) (*en banc*): "Under this theory, a person violates Rule 10b–5 when he misappropriates material nonpublic information in breach of a fiduciary duty or similar relationship of trust and confidence and uses that information in a securities transaction."

Unlike the classical theory of insider trading, the misappropriation theory does not require that the buyer or seller of securities be defrauded; rather, "the predicate act of fraud may be perpetrated on the source of the nonpublic information, even though the source may be unaffiliated with the buyer or seller of securities." *Chestman*, 947 F.2d at 566. The owner of the misappropriated information need not be the corporation whose shares are traded. *United States v. Libera*, 989 F.2d 596, 599 (2d Cir.1993).

■ The misappropriation theory prohibits trading in securities based on material nonpublic information acquired in violation of a duty to *any* owner of such information, whether or not the owner is the corporation whose shares are traded. *Libera*, 989 F.2d 596, 599. That Defendant owed no duty and

court judges a motion for a new trial and provides, in pertinent part, "[t]he court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice." *United*-

 *ed States v. Campbell*, 977 F.2d 854, 860 (4th Cir.1992); *United States v. Mickens*, 837 F.Supp. 745, 748 (S.D.W.Va.1993) (Haden, C.J.).

had no relationship to VLC or its shareholders is of no consequence, for the government's theory arose from Defendant's breach of duty to his employer, the West Virginia Lottery and the citizens of West Virginia.

## IV.

■ Defendant asserts the Court erred in allowing the government to establish wire fraud by alleging Defendant devised a scheme to defraud West Virginians of their "intangible right to honest services," 18 U.S.C. § 1346, because the concept is unconstitutionally vague. The Court's instructions contained a specific and extensive definition of the type of "scheme or artifice to defraud" which violates the "intangible right of honest services" under § 1346.

The Court concludes the concept of the duty of honest services sufficiently conveys warning of the proscribed conduct when measured in terms of common understanding and practice.[3] The Constitution requires no more. *United States v. Petrillo*, 332 U.S. 1, 8, 67 S.Ct. 1538, 1542, 91 L.Ed. 1877 (1947). The fact that there may arise marginal cases where it is difficult to determine on which side of the line a particular factual situation falls is "no sufficient reason to hold the language too ambiguous to define a criminal offense." *Petrillo*, 332 U.S. at 7, 67 S.Ct. at 1542 (quoting *Robinson v. United States*, 324 U.S. 282, 285–86, 65 S.Ct. 666, 668–68, 89 L.Ed. 944 (1945)). To require there be a more definite delineation of conduct violating the duty of honest service "would strain the requirement for certainty in criminal law standards too near the breaking point." *Petrillo*, 332 U.S. at 7, 67 S.Ct. at 1542.

## V.

■ Defendant cites as error the Court's evidentiary ruling excluding from evidence a newspaper article Defendant wished to introduce. The Court disallowed admission of the article because it constituted inadmissible hearsay. *See United States v. Mathis*, 550 F.2d 180, 182 (4th Cir.1977), *cert. denied*, 429 U.S. 1107, 97 S.Ct. 1140, 51 L.Ed.2d 560 (1977) [newspaper article connecting witness

to a robbery was inadmissible hearsay, even for impeachment purposes]; *Horta v. Sullivan*, 4 F.3d 2, 8–9 (1st Cir.1993) [newspaper article is hearsay, inadmissible at trial to prove the truth of the reported facts]; *Dallas County v. Commercial Union Assurance Co.*, 286 F.2d 388, 391–92 (5th Cir.1961) [newspaper article is hearsay, and in almost all circumstances is inadmissible].

The Court's ruling did not preclude Defendant from reaching the jury with evidence of the article's content, for the reporter who wrote the article was named on Defendant's witness list and available to testify. Defendant, however, did not call the reporter as a witness.

## VI.

■ Finally, Defendant argues the Court erred by instructing the jury about the specific duties the Rules of Professional Responsibility impose on lawyers regarding confidentiality of information. Defendant asserts this instruction was not supported by the government's evidence.

The government established at trial Defendant served as counsel to the West Virginia Lottery; the evidence supported the government's charge Defendant used confidential information he gained by virtue of his position as Lottery counsel to garner profit for himself and his friends. The evidence therefore justified an instruction on Defendant's duty under the Rules of Professional Conduct to maintain the confidentiality of his clients' information.

## VII.

For these reasons, the Court concludes the interest of justice does not require that Defendant receive a new trial. Accordingly, the Court **DENIES** Defendant's motion for a new trial. The Clerk is directed to send a copy of this Order to counsel.

---

**3.** *See, e.g., Weiss v. United States*, 122 F.2d 675, 681 (5th Cir.1941): "The law does not define fraud; it needs no definition; it is as old as falsehood and as versable as human ingenuity."